[No. E000975. Fourth Dist., Div. Two. July 30, 1985.]

THOMAS LUNDY, Plaintiff and Appellant, v.
CALIFORNIA REALTY et al., Defendants and Respondents.

**COUNSEL**

Estes & Estes and T. David Estes for Plaintiff and Appellant.

Furness, Flory & Middlebrook and Michael R. Kaiser for Defendants and Respondents.

**OPINION**

**KAUFMAN, J.**—Plaintiff Thomas Lundy was injured when he jumped headlong over a fence to avoid a German shepherd dog allegedly attacking him. The dog was owned by Rhoda Mary Graves and the incident occurred at Mrs. Graves' residence which she was renting from California Realty, Kathleen Daily and Fred Kruger (collectively the property owners).

Plaintiff filed this action to recover damages for his personal injuries from Mrs. Graves and the property owners. Plaintiff alleged that defendant

Graves owned a large German shepherd dog, possessed of vicious and dangerous propensities and inclined to attack and bite people and kept the dog in an unfenced backyard where she lived without posting a sign to warn of the dog's presence. As a result, plaintiff alleged, while on the property for the purpose of conducting a study preliminary to the installation of cable television lines, plaintiff was attacked and bitten and suffered personal injuries and other damages.

In the second count directed against the property owners, plaintiff alleged that the property owners rented the property to defendant Graves with knowledge of the dog's alleged dangerous propensities and the fact it would be kept on the premises. The property owners were alleged to have negligently caused plaintiff's injuries by: (1) renting the property to defendant Graves with knowledge the dog would be kept on the premises; (2) allowing defendant Graves to remain in possession of the premises with her dog; (3) failing to enclose the backyard; and (4) failing to post a sign or signs warning of the dog's presence.

Defendant property owners moved for summary judgment asserting they had no knowledge or notice of any dangerous propensities of Mrs. Graves' dog and therefore neither owed any duty nor breached any duty to plaintiff. After considering the several declarations, partial depositions and answers to interrogatories filed in support of and in opposition to the motion, the trial court granted the motion and entered summary judgment in favor of defendant property owners.

Plaintiff appeals, contending that whether defendant property owners exercised reasonable care in the circumstances constituted a triable issue of fact.[1]

## FACTS

From the declarations, deposition excerpts and answers to interrogatories presented to the trial court the following facts, undisputed unless noted otherwise, appear.

Property owners owned the residential real property at 927 North Beverly Street in Corona, California. The property was an old wood frame house sitting on a dirt lot and was unfenced. On or about August 5, 1979 defendant

---

[1]Associated Indemnity Corporation, plaintiff's employer's workers' compensation insurance carrier, intervened as a plaintiff in the action to recover workers' compensation benefits paid to plaintiff on account of his injury. The summary judgment in favor of defendant property owners was also against Associated Indemnity, however it has not appealed and is therefore not a party to this appeal.

Kruger acting on behalf of the property owners, rented the property to Rhoda Mary Graves and her family pursuant to written rental agreement on a month-to-month basis terminable upon 30 days notice by either party at a monthly rental of $290. The rental agreement provided that no animal should be kept on or about the premises without prior written consent "except Shepard [*sic*] Dog Named Thunder."

Pursuant to the rental agreement Mrs. Graves and her family took possession of the property. They owned and kept on the property the German shepherd dog which plaintiff described as large, weighing about 100 pounds. When not inside the house the dog was usually chained to a tree in the backyard of the property, but whether or not he was so chained on the date and at the time of the incident in question is disputed.

Aside from the reference to the dog on the written rental agreement, defendant property owners had no knowledge whatever concerning the dog. None of them had seen the dog nor visited the property after it was rented to Mrs. Graves and her family nor received any complaint of any kind concerning the dog or any dangerous propensity on the part of the dog.

On October 6, 1981 plaintiff, a field engineer for a cable television installation company, was doing a survey of existing utility poles in preparation for the installation of cable television lines in the area. While engaged in that work he entered onto the property at 927 North Beverly Street for the purpose of observing and recording information about a power pole at the rear of the property. He approached the front door of the house for the purpose of informing the residents of his presence, but no one answered his knock on the door. He then left the porch of the house and began walking around the right side of the house. There was no fence on either side of the house to prevent or obstruct access to the backyard and plaintiff saw nothing indicating that a dog might be present. There were no signs posted concerning the presence of the dog.

In the words of plaintiff: "Out of nowhere, a large german shepard [*sic*] dog came running, barking and growling at me. I retreated and the dog chased me, [and] in order to escape, I jumped head first over a fence on the side of the yard, into a neighbor's yard. As I was jumping over the fence, the dog was jumping on me. I landed on my head and shoulder. [¶] In my fall, I suffered scrapes and bruises on my hands and multiple compression fractures of my back. I have been unable to work since the accident because of the pain I continue to suffer and the medicaiton [*sic*] which has been prescribed."

## Discussion of Contentions

■ Plaintiff correctly points out that after the decision in *Rowland* v. *Christian* (1968) 69 Cal.2d 108, 119-120 [70 Cal.Rptr. 97, 443 P.2d 561, 32 A.L.R.3d 496] the liability of landowners and occupiers to injured third persons is determined by ordinary negligence principles rather than formalized categorization of the injured person as a trespasser, licensee or invitee. ■ Plaintiff then points to Civil Code section 1714 which states in essence that everyone is responsible for an injury caused to another by his want of ordinary care or skill in the management of his property,[2] and asserts that that code section establishes the duty of defendant property owners to exercise reasonable care toward plaintiff. Then plaintiff argues, defendants' duty having been established, whether defendants breached that duty by failing to exercise reasonable care is a question for the trier of fact and represents a triable issue of fact. Plaintiff asserts "the jury could find that a reasonably prudent landlord would not rent an unfenced property to the owner of a German Shepard [*sic*], that if he did so, he would post a 'Beware of Dog' sign or require his tenant to do so, or that he would evict the tenant thereafter. [¶] . . . It is certainly foreseeable that utility company employees might be required from time to time to come onto the property. It is similarly foreseeable that the tenant's German Shepard [*sic*] might occasionally get loose, even if usually chained, and that if he did so, he would run after and bark at a utility company employee, who might be injured in his escape attempt."

A good deal of what plaintiff says is true and correct. We do not agree, however, with plaintiff's fundamental premise that Civil Code section 1714 establishes the legal duty of a defendant in a particular case, leaving the standard of care and the question of breach of duty as questions for the trier of fact.

It is true of course that Civil Code section 1714 embodies the public policy of this state and in a very general sense imposes a duty upon every person to exercise reasonable care to avoid injury to every other person. However, plaintiff's conclusion that Civil Code section 1714 establishes the existence of a legal duty on the part of the defendant in a particular case is incorrect. If that were so, the myriad cases holding the existence of a legal duty on the part of a defendant in a particular case is essentially a question of law (see, e.g., *Weirum* v. *RKO General, Inc.* (1975) 15 Cal.3d 40, 46

---

[2]Civil Code section 1714, subdivision (a) reads in pertinent part: "Every one is responsible, not only for the result of his willful acts, but also for an injury occasioned to another by his want of ordinary care or skill in the management of his property or person, except so far as the latter has, willfully or by want of ordinary care, brought the injury upon himself."

[123 Cal.Rptr. 468, 539 P.2d 36]; *Amaya* v. *Home Ice, Fuel & Supply Co.* (1963) 59 Cal.2d 295, 307-308 [29 Cal.Rptr. 33, 379 P.2d 513] [overruled on another point in *Dillon* v. *Legg* (1968) 68 Cal.2d 728, 748 (69 Cal.Rptr. 72, 441 P.2d 912, 29 A.L.R.3d 1316)]; *Peter W.* v. *San Francisco Unified Sch. Dist.* (1976) 60 Cal.App.3d 814, 821-822 [131 Cal.Rptr. 854]; *Schauf* v. *Southern Cal. Edison Co.* (1966) 243 Cal.App.2d 450, 458 [52 Cal.Rptr. 518]; *Raymond* v. *Paradise Unified School Dist.* (1963) 218 Cal.App.2d 1, 8 [31 Cal.Rptr. 847]; 4 Witkin, Summary of Cal. Law (8th ed. 1974) Torts, § 493, p. 2756) would be inexplicable.

█ " 'The determination whether in a specific case the defendant will be held liable to a third person not in privity is a matter of policy and involves the balancing of various factors, among which are the extent to which the transaction was intended to affect the plaintiff, the foreseeability of harm to him, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, and the policy of preventing future harm.' . . . [¶] It bears emphasis that 'foreseeability of harm' is but one of the half dozen relevant factors mentioned in the just quoted passage . . . ." (*Amaya* v. *Home Ice, Fuel & Supply Co., supra,* 59 Cal.2d at pp. 309-310 quoting from *Biakanja* v. *Irving* (1958) 49 Cal.2d 647, 650 [320 P.2d 16, 65 A.L.R.2d 1358]; accord *Connor* v. *Great Western Sav. & Loan Assn.* (1968) 69 Cal.2d 850, 865 [73 Cal.Rptr. 369, 447 P.2d 609, 39 A.L.R.3d 224]; *Rowland* v. *Christian, supra,* 69 Cal.2d 108, 117; see also *Mark* v. *Pacific Gas & Electric Co.* (1972) 7 Cal.3d 170, 179 [101 Cal.Rptr. 908, 496 P.2d 1276].)

█ As observed by the court in *Tarasoff* v. *Regents of University of California* (1976) 17 Cal.3d 425, 434-435 [131 Cal.Rptr. 14, 551 P.2d 334, 83 A.L.R.3d 1166]: "As a general principle, a 'defendant owes a duty of care to all persons who are foreseeably endangered by his conduct, with respect to all risks which make the conduct unreasonably dangerous.' (*Rodriguez* v. *Bethlehem Steel Corp.* (1974) 12 Cal.3d 382, 399 [115 Cal.Rptr. 765, 525 P.2d 669]; *Dillon* v. *Legg, supra,* 68 Cal.2d 728, 739; *Weirum* v. *RKO General, Inc.* (1975) 15 Cal.3d 40 [123 Cal.Rptr. 468, 539 P.2d 36]; see Civ. Code, § 1714.) As we shall explain, however, *when the avoidance of foreseeable harm requires a defendant to control the conduct of another person, or to warn of such conduct,* the common law has traditionally imposed liability only if the defendant bears some special relationship to the dangerous person or to the potential victim." (Italics added.)

█ As explained by the court in *Amaya,* "[m]uch confusion has been engendered in this connection by a misplaced reliance on the 'foreseeability' formula. It is not enough to say that duty has often been defined in terms

of 'foreseeability,' that reasonable minds might differ as to whether the injury in the present case was 'foreseeable,' and hence that the duty issue was here a question of fact that should have been submitted to the jury. As this court pointed out in *Richards* v. *Stanley* (1954), *supra*, 43 Cal.2d 60, 66 . . . 'Necessarily involved in submitting the case to the jury, however, is a preliminary determination [i.e., to be made by the court] that, granted a foreseeable risk, a duty arises. . . . *[T]here are many situations involving foreseeable risks where there is no duty.*' (Italics added.) We then (in addition to referring to *Routh* v. *Quinn* (1942), *supra*, 20 Cal.2d 488 [127 P.2d 1, 149 A.L.R. 215]) discussed *Lane* v. *Bing* (1927) 202 Cal. 590 [262 P. 318], and *Goodman* v. *Harris* (1953) 40 Cal.2d 254 [253 P.2d 447], and concluded (at p. 67 . . . of 43 Cal.2d), 'Although in both of the foregoing situations it would be difficult to say that reasonable minds could not differ as to whether or not a duty should be imposed, *the question was one of law for the court, and not for the jury, to decide.*' (Italics added.)" (*Amaya* v. *Home Ice, Fuel & Supply Co.*, *supra*, 59 Cal.2d 295, 308.)

 Thus the crucial question in the case at bench is whether the defendant property owners had a legal duty to plaintiff to do any of the things plaintiff asserts they should have done: refuse to rent to Mrs. Graves; post a sign warning of the dog's presence or require Mrs. Graves to do so; or failing that, evict Mrs. Graves and her family together with the dog. We conclude they did not. In our view the case of *Uccello* v. *Laudenslayer* (1975) 44 Cal.App.3d 504 [118 Cal.Rptr. 741, 81 A.L.R.3d 628] is controlling.

In *Uccello* the appellate court reversed a judgment of nonsuit on facts somewhat similar to those in the case at bench, with one crucial exception: the court assumed from the opening statement that the landowner knew of the dangerous propensities of the tenant's vicious dog.[3] The court expressly noted Civil Code section 1714 and the *Rowland* v. *Christian* decision, but went on: "Historically, the public policy of this state generally has precluded a landlord's liability for injuries to his tenant or his tenant's invitees from a dangerous condition on the premises which comes into existence after the tenant has taken possession. This is true even though by the exercise of reasonable diligence the landlord might have discovered the condition. [Citations.]." (*Uccello* v. *Laudenslayer*, *supra*, 44 Cal.App.3d 504, 510.)

---

[3]The nonsuit had been granted at the conclusion of the plaintiff's opening statement. The court said: "While appellant's counsel did not expressly state that respondent [defendant landlord] knew of the viciousness of the dog, a reasonable inference of such knowledge may be drawn from the opening statement. Accordingly, for the purpose of reviewing the propriety of the nonsuit, we will assume that a question of fact was presented as to whether respondent had such knowledge." (*Uccello* v. *Laudenslayer*, *supra*, 44 Cal.App.3d 504, 510.)

The court then proceeded to consider and balance the factors affecting the existence of duty mentioned in *Rowland* v. *Christian, supra,* 69 Cal.2d 108, 117; *Connor* v. *Great Western Sav. & Loan Assn., supra,* 69 Cal.2d 850, 865; *Amaya* v. *Home Ice, Fuel & Supply Co., supra,* 59 Cal.2d 295, 309-310; *Biakanja* v. *Irving, supra,* 49 Cal.2d 647, 650 and concluded that on balance the landlord in that case was under a legal duty to exercise care with respect to the plaintiff. (44 Cal.App.3d at pp. 513-514.)

Crucial to the *Uccello* decision, however, was the court's assumption of the fact that the landlord had actual knowledge of the dog and its dangerous propensities. Said the court: "Assuming respondent's [defendant landlord's] knowledge of the vicious dog, the foreseeability of harm to the appellant was obvious; it was simply a question of time before someone invited onto the premises would be attacked by the dog. . . . [¶] It should be emphasized [, however,] that *a duty of care may not be imposed on a landlord without proof that he knew of the dog and its dangerous propensities.* Because the harboring of pets is such an important part of our way of life and because the exclusive possession of rented premises normally is vested in the tenant, we believe that *actual* [original italics] knowledge and not mere constructive knowledge is required. For this reason we hold that a landlord is under no duty to inspect the premises for the purpose of discovering the existence of a tenant's dangerous animal; only when the landlord has actual knowledge of the animal, coupled with the right to have it removed from the premises, does a duty of care arise." (*Uccello* v. *Laudenslayer, supra,* 44 Cal.App.3d 504, 513-514; italics added, footnote omitted.)

Plaintiff urges that the latter portion of the preceding quote was but dictum which may be and should be disregarded by this court. We are uncertain whether it is or is not properly labeled as dictum, but dictum or not we believe it is sound and we agree with it. An *owner* of a dog may be held liable for injuries inflicted by it on another person without any showing the dog had any especially dangerous propensities or that the owner knew of any such dangerous propensities. (Civ. Code, § 3342; *Goldberg* v. *Rabuchin* (1944) 65 Cal.App.2d 111, 114 [150 P.2d 8].) However to impose liability on someone other than the owner, even a keeper, " '*previous knowledge of the dog's vicious nature must appear.*' " (*Buffington* v. *Nicholson* (1947) 78 Cal.App.2d 37, 41-42 [177 P.2d 51] and cases cited, original italics.)

Finally, plaintiff asserts that, interpreting the expressions "dangerous propensities" and "vicious nature" liberally, it appears in the case at bench that defendant property owners did have knowledge of Mrs. Graves' dog's dangerous propensities. The argument is that the property owners actually knew that Mrs. Graves was going to keep a German shepherd dog named Thunder on the unfenced premises rented to her and that anyone knows that

a 100 pound German shepherd is going to chase and attack any stranger coming on the property unless restrained. Plaintiff also implies that inferences favorable to his position ought to be drawn from the fact that the dog's name was Thunder.

We do not agree. The facts set forth in the papers that were before the trial court show that aside from what was in the handwritten rental agreement, defendant property owners knew nothing whatever about the dog. There is nothing in the facts indicating defendant property owners knew either the dog's size or age. He might have been a playful pup for all they knew. Neither do we believe judicial notice may be taken that all German shepherds are dangerous. Nor can defendants' knowledge of any dangerous propensity of the dog be inferred simply because they knew his name was Thunder. It is not uncommon for an owner of a St. Bernard or Great Dane to name the dog Tiny.

The facts before the trial court fell far short of creating a triable issue of fact as to defendant property owners' knowledge of any dangerous propensities on the part of Mrs. Graves' dog.

We conclude the summary judgment was properly granted.

### DISPOSITION

The judgment is affirmed.

Morris, P. J., and McDaniel, J., concurred.