Kathy Gentle appeals from a summary judgment in favor of the defendants Pine Valley Apartments and Evans Realty Company, in her action based on alleged personal injuries incurred by her son, Christopher Gentle, on the defendants' property. We affirm in part, reverse in part, and remand.
This action arose out of two separate incidents in which Ms. Gentle says Christopher was injured on these defendants' property by a dog. Christopher, at the times of these incidents, was 10 years old and was living in an apartment complex owned by Pine Valley Apartments ("Pine Valley") and managed by Evans Realty Company ("Evans").
In 1991, Ricky Roper and his family, like Christopher and his mother, resided in one of Pine Valley's apartments. Ms. Gentle's evidence indicated that on February 10, 1991, Mr. Ropers' dog, "Murphy," a chow-spitz crossbreed, was tied to a post on a stair rail outside Mr. Roper's apartment; that a group of children, including Christopher, was playing in a courtyard area of the apartments in the vicinity of the stair rail; that one of the children loosed the dog and it subsequently became frightened or agitated and began running around the courtyard; that Christopher attempted to capture the dog and that, while he was making that attempt, the dog bit him on the upper lip; and that the wound required reconstructive surgery.
Ms. Gentle's evidence indicated that a second incident occurred in July 1991, while Ricky Roper was leading the dog on a leash *Page 930 
in the common area. Ms. Gentle said that on that occasion Roper and the dog approached Christopher and that when they did so the dog trampled Christopher and scratched him on the back.
On September 10, 1991, Ms. Gentle sued Roper, alleging that he had negligently or wantonly failed (1) to control the dog, and (2) to warn Ms. Gentle and Christopher of the dog's "dangerous propensities." On January 31, 1992, Ms. Gentle amended her complaint to add as defendants Pine Valley and Evans. On March 4, 1993, the trial court entered a summary judgment in favor of Pine Valley and Evans and certified the judgment as final, pursuant to Ala.R.Civ.P. 54(b). From that judgment Ms. Gentle appeals.
At the outset, we reiterate that Ms. Gentle's claims arise out of two separate alleged encounters with Roper's dog on the apartment premises, one occurring on February 10, 1991, and one occurring in July 1991. Because the incidents require different analyses, we shall address each incident separately. Moreover, the claims against Roper, the owner of the dog, are not involved in this appeal; therefore, Ala. Code 1975, § 3-6-1, setting out the liability of a dog owner, does not govern the disposition of this case.[1]
 I. The February Encounter
Ms. Gentle's claims against Pine Valley and Evans are based on alleged violations of duties owed by owners or lessors of real estate. More specifically, her claims are based on alleged (1) negligent creation or maintenance of an artificial condition on land, as defined by Restatement (Second) of Torts
§ 339 (1977), and (2) negligent or wanton maintenance of the common areas of the apartment complex.
 A. Section 339.
Section 339, Restatement, reads:
 "A possessor of land is subject to liability for physical harm to children trespassing thereon caused by an artificial condition upon the land if
 "(a) the place where the condition exists is one upon which the possessor knows or has reason to know that children are likely to trespass, and
 "(b) the condition is one of which the possessor knows or has reason to know and which he realizes or should realize will involve an unreasonable risk of death or serious bodily harm to such children, and
 "(c) the children because of their youth do not discover the condition or realize the risk involved in intermeddling with it or in coming within the area made dangerous by it, and
 "(d) the utility to the possessor of maintaining the condition and the burden of eliminating the danger are slight as compared with the risk to children involved, and
 "(e) the possessor fails to exercise reasonable care to eliminate the danger or otherwise to protect the children."
See also Tolbert v. Gulsby, 333 So.2d 129 (Ala. 1976) (adopting § 339). Ms. Gentle contends that the facts surrounding the February encounter satisfy all elements of a cause of action pursuant to § 339.[2] We disagree.
Section 339(b) requires admissible evidence that "the condition is one of which the possessor knows or has reason toknow and which he realizes or should realize will involve an unreasonable risk of death or serious bodily harm to . . . children." (Emphasis added.) Thus, to impose liability on Pine Valley or Evans would require their preincident *Page 931 
knowledge, either actual or constructive, of the dog's dangerous propensities.
However, the only evidence produced by Ms. Gentle to demonstrate such knowledge consisted entirely of statements taken from her deposition referring to what other tenantstold her about the dog. Typical of this evidence are statements contained in the following colloquy:
 "Q. Did you have any knowledge whatsoever that Mr. Roper's dog, 'Murphy,' could be vicious?
"A. [By Kathy Gentle] No.
 "Q. Since then, have you learned of any prior attacks by Mr. Roper's dog, Murphy, or by any other dog?
"A. Yes.
"Q. Tell me what you have learned since then.
 "A. After my son was taken to the hospital, some of the area children that lived there came to my apartment and knocked on the door to see him and explained that the dog had been vicious and growled at them or lunged at them.
". . . .
"Q. Do you know who these children were?
"A. One was Scott LaFrance.
". . . .
 "Q. Do you remember the identity of any of the other children?
"A. One child's name was Kyle.
". . . .
 "Q. Did any other children indicate to you that the dog had growled or lunged at them?
"A. An adult.
"Q. Who would that have been?
"A. Cindy Bradshaw.
"Q. What did Cindy Bradshaw tell you?
 "A. That the dog was vicious — that the Ropers acquired the dog from a previous owner whom the dog attacked, thus causing him to give the dog away, and that that is how the Ropers got the dog.
 "Q. Did Cindy Bradshaw indicate that she had ever been growled at?
"A. Yes.
". . . .
 "Q. Have any of these people ever actually been bitten by the dog?
"A. Not at that time.
 "Q. Was this because the dog was on a leash or inside?
 "A. I have no idea. Scott LaFrance indicated that the dog mauled him and he had scratches that were treated by a nurse that was on the premises.
". . . .
 "Q. Ms. Gentle, are you aware of any evidence that before February 10, 1991, that the Pine Valley Apartments or anybody at Evans Realty knew about this dog, this Murphy, that it was vicious or that it could attack somebody or that it had snarled at anybody or anything like that?
 "A. I was told that the dog had been reported to Betty Flick [Evans's resident manager] on a prior occasion. I don't remember who told me that or whom the dog was supposed to have attacked.
"Q. Did you ask Betty Flick about —
 "A. I did ask Betty Flick when I reported the dog bite to her and later understood that it had been turned in to her previously that someone else had been bitten by the dog and she denied any knowledge of it."
(Emphasis added.)
Ms. Gentle offered these statements regarding the dog's alleged aggressive behavior to show that the dog had, in fact, misbehaved before February 1991 and, consequently, that the dog's propensity for violence had come, or should have come, to the attention of these two defendants. Thus, the assertions in Ms. Gentle's deposition were "out of court statement[s], being offered to show the truth of the matter asserted," Lavett v.Lavett, 414 So.2d 907, 910 (Ala. 1982), and, consequently, constituted hearsay. Id.
"Hearsay cannot create an issue of fact." Black v. Reynolds,528 So.2d 848, 849 (Ala. 1988). Evidence consisting of inadmissible hearsay statements does not constitute "substantial evidence" and is insufficient to overcome a motion for a summary judgment. Welch v. Houston County Hospital Board,502 So.2d 340, 342 (Ala. 1987). Consequently, *Page 932 
the hearsay statements contained in Gentle's deposition cannot serve to rebut the defendants' prima facie showing that there was no genuine issue of material fact. Rule 56(c), Ala.R.Civ.P.
Alternatively, Ms. Gentle attempts to base liability upon what she alleges to be the inherently dangerous nature of thebreed of dog involved. More specifically, she says of Murphy: "A dog of this size, bred from spitz and chow, presents a clear danger to children." Brief of Appellant, at 20. For this proposition, she relies implicitly on Humphries v. Rice,600 So.2d 975 (Ala. 1992), in which this Court adopted the rule that "an owner or keeper of an animal [is] charged with knowledge of the propensities of the breed of animal he or she owns." 600 So.2d at 978.
Assuming, arguendo, that the Humphries rule somehow applies to defendants such as those involved in this appeal — the owner of the apartment complex and the management company — we note that Ms. Gentle produced no evidence that would bring her case within the rule. Indeed, some uncertainty remains in the wake of Humphries as to the quantity and quality of proof necessary to invoke its rule. This uncertainty results, in part, from the fact that the inherent propensity of the dog involved in Humphries was "not determinative of the result reached" in that case. 600 So.2d at 978.
Notably, Humphries involved a pit bull — a breed of dog that has achieved a remarkable notoriety for aggressiveness. In this case, however, nothing in the record indicates that a chow-spitz crossbreed is inherently dangerous. See Lundy v.California Realty, 170 Cal.App.3d 813, 216 Cal.Rptr. 575
(1985) (refusing to notice judicially that German shepherds are inherently dangerous). Consequently, Gentle failed to present substantial evidence (Ala. Code 1975, § 12-21-12) that the dog's presence at the apartment complex created a "condition" that Pine Valley and Evans knew or should have known "involve[d] an unreasonable risk of death or serious bodily harm to . . . children." Restatement § 339(b).
 B. Maintenance of Common Areas
Gentle also contends that these two defendants breached duties attendant upon their control of the courtyard where the incident occurred. Our cases have long recognized the rule that "[a] landlord has the duty to maintain common areas in a reasonably safe condition in order to avoid liability for injury to a tenant or a guest." Campbell v. Valley GardenApartments, 600 So.2d 240, 241 (Ala. 1992); see also Bates v.Peoples Savings Life Ins. Co. of Tuscaloosa, 475 So.2d 484
(Ala. 1985); Coggin v. Starke Bros. Realty Co., 391 So.2d 111,113 (Ala. 1980); Pearce v. Sloss-Sheffield Steel Iron Co.,211 Ala. 639, 101 So. 585 (1924); Mudd v. Gray, 200 Ala. 92,75 So. 468 (1917); Comment, Liability of an Alabama Landlord forDefects in the Premises, 3 Ala.L.Rev. 335, 349 (1951).
This rule is also expressed in Restatement (Second) of Torts
§ 360 (1977):
 "A possessor of land who leases a part thereof and retains in his own control any other part which the lessee is entitled to use as appurtenant to the part leased to him, is subject to liability to his lessee and others lawfully upon the land with the consent of the lessee or a sublessee for physical harm caused by a dangerous condition upon that part of the land retained in the lessor's control, if the lessor by the exercise of reasonable care could have discovered the condition
and the unreasonable risk involved therein and could have made the condition safe."
(Emphasis added.)
Whether the presence of a tenant's vicious dog in areas shared by other apartment tenants constitutes a "dangerous condition" for which a landlord may incur liability appears to be a question of first impression in this Court. Other courts, however, have considered that question.
One of the earliest cases addressing this issue involved an action by a tenant who was bitten by a dog "on [the] common stairway in the main hall" of a multi-unit apartment building.Siegel v. 1536-46 St. John's Place Corp., 184 Misc. 1053, 1053,57 N.Y.S.2d 473, 473 (N.Y. City Court 1945). The aggressive dog was owned by another tenant employed *Page 933 
by the premises owner to supervise the building. Id. In holding for the plaintiff, the court stated:
 "Inasmuch as this was a fifty-two family multiple dwelling, the public halls and stairs of which were open and frequented by tenants and their family members as well as others having business and social relations therewith, it became a continuing duty upon the owner of this building to keep such common ways in a reasonably safe condition resultant upon such known general usage and to exercise such care in the premises as a reasonably prudent person might under the same circumstances. Such duty extended to the exclusion of known vicious animals from frequenting thereabout. An action based on same is grounded on negligence, . . . regardless of the fact that the corporate defendant was neither an owner [nor a] harborer of said dog. The evidence indicates prior notice to defendant's officer of the dog's presence in and about the public halls and its trend toward viciousness. Such owners had control of the premises with power to expel the dog and its owner as well. It follows that liability ensued."
184 Misc. at 1054, 57 N.Y.S.2d at 474 (emphasis added; citations omitted).
More recently, the Superior Court of New Jersey, Appellate Division, held that an attack in a common area by a dog known by the premises lessor to have vicious tendencies presented a jury question as to the lessor's breach of a duty to maintain common areas in a reasonably safe condition. Linebaugh v.Hyndman, 213 N.J. Super. 117, 516 A.2d 638 (1986), affirmed,106 N.J. 556, 524 A.2d 1255 (1987). In that case, a child was bitten by a dog while in the care of her babysitter — a tenant in a two-unit apartment building — in the common backyard area of the building. The dog was owned by a tenant renting the other unit. In the resulting action against the landlord and others, the trial court, holding that "a residential landlord owes no duty to protect an invitee from the dangers attributable to a tenant's vicious dog kept in a shared common area," entered a summary judgment in favor of the landlord.213 N.J. Super. at 120, 516 A.2d at 640.
In reversing that judgment, the Appellate Division explained:
 "We begin with the premise that a landlord is obliged to exercise reasonable care in the maintenance of common facilities under his control to the end that the premises are reasonably safe and fit for the uses which he has invited others to make of them. Mayer v. Fairlawn Jewish Center, 38 N.J. 549, 555, 186 A.2d 274 (1962); Levine v. Bochiaro, 137 N.J.L. 215, 219, 59 A.2d 224 (E. 
A. 1948); De Los Santos v. Saddlehill, Inc., 211 N.J. Super. 253, 261-262, 511 A.2d 721
(App.Div. 1986). Where a dwelling contains two or more apartments which are rented to separate tenants and the landlord provides certain facilities for their common use or benefit, possession and control of such portions are deemed to be retained by him. Coleman v. Steinberg, 54 N.J. 58, 63, 253 A.2d 167 (1969). In such situations, 'the law imposes upon the landlord the duty of maintaining [such common facilities] in a reasonably safe condition for the use and enjoyment of the tenants.' Ibid. Where he fails to satisfy that obligation and such failure results in harm to the tenants or persons lawfully on the premises, 'ordinarily the landlord is liable for the [resulting] injury.' Ibid. See also Monohan v. Baime, 125 N.J.L. 280, 282, 15 A.2d 599 (E. 
A. 1940); Ellis v. Caprice, 96 N.J. Super. 539, 547, 233 A.2d 654 (App.Div. 1967), certif. den. 50 N.J.
409, 235 A.2d 901 (1967); 2 Harper and James, The Law of Torts, § 27.17, p. 1517 (1956); Prosser, Law of Torts, § 63, pp. 406-408 (1964); Restatement, Second, Torts, § [§] 360-361 (1965).
 ". . . Consistent with the landlord's obligation to maintain the premises in a reasonably safe condition, a landlord is obliged to take reasonable measures to protect other tenants and their invitees from harm which a vicious dog is capable of inflicting. Cf. Nakhla v. Singer-Shoprite, Inc., 205 N.J. Super. 184, 187, 500 A.2d 411
(App.Div. 1985), certif. den. 102 N.J. 399, 508 A.2d 257 (1986). To permit a landlord in such a situation to sit idly by in the face of the known danger to others *Page 934 would be socially and legally unacceptable."
213 N.J. Super. at 120-21, 516 A.2d at 640 (footnote omitted; emphasis added).
A comparable rule is recognized in Florida. In Noble v.Yorke, 490 So.2d 29 (Fla. 1986), Yorke sued Noble, the apparent owner of a dog that bit her on Noble's premises. Her initial complaint alleged a cause of action based on Fla.Stat.Ann. §767.04 (1984), which, like Alabama's statute, § 3-6-1, Ala. Code 1975, applies exclusively to the owner of a dog (see n. 1). 490 So.2d at 30. Later, Yorke sought the court's permission to amend her complaint to include an alternative count alleging common law negligence. In that count, she alleged that Noble, as nonowner of the dog, had negligently maintained the premises on which she was injured. The trial court, holding that the statute provided an exclusive remedy, refused Yorke's request.
The Florida Supreme Court reversed, holding that "a dog-bite victim may sue the non-owner of the dog upon a theory of commonlaw liability." 490 So.2d at 31-32 (emphasis added). See alsoGiaculli v. Bright, 584 So.2d 187 (Fla.Dist.Ct.App. 1991) (action against a landlord based on an attack by a dog in the common backyard of an apartment complex involved triable issues as to the extent of the landlord's notice of the dog's vicious propensity and the landlord's opportunity to remedy the condition); Anderson v. Walthal, 468 So.2d 291 (Fla. Dist. Ct. App. 1985) (commercial property manager's knowledge of dog's vicious propensity may be imputed to the property owner).
In this case, Pine Valley has cited no authority contrary to the rule expressed in the New York, New Jersey, and Florida cases, and we have found no such authority. In fact, a number of cases have recognized a broader application of this rule. The first class of cases has imposed liability on a landlord for attacks by a tenant's dog occurring on the demised premises themselves. See, e.g., Uccello v. Laudenslayer, 44 Cal.App.3d 504,118 Cal.Rptr. 741 (1975); Vigil v. Payne, 725 P.2d 1155
(Colo.App. 1986); Strunk v. Zoltanski, 62 N.Y.2d 572,479 N.Y.S.2d 175, 468 N.E.2d 13 (1984); and Palermo v. Nails,334 Pa. Super. 544, 483 A.2d 871 (1984). A second class of cases has imposed liability on a landlord for attacks by a tenant's dogon the property of third parties. See, e.g., Cronin v.Chrosniak, 145 A.D.2d 905, 536 N.Y.S.2d 287 (1988); Salazar v.Webb, 44 Colo. App. 429, 618 P.2d 706 (1980); Park v. Hoffard,315 Or. 624, 847 P.2d 852 (1993). The duty recognized in both of these classes of cases was based on the right to control the premises (1) inherent in the owner at the commencement of the tenancy; (2) renewed periodically, as by a month-to-month tenancy; or (3) reserved through a specific lease provision.
We need not, and, therefore, do not, determine the extent to which a landlord in Alabama may be liable for harm caused by a dog on the demised premises themselves or on the premises of third parties. Our reference to those cases that have imposed such liability merely emphasizes the correctness of a rule requiring the landlord to exercise reasonable care to protect tenants from dog attacks in common areas.
We hold that the presence of a tenant's vicious dog in areas shared by other tenants constitutes a "dangerous condition" and that a landlord must exercise reasonable care to prevent injuries from such a dangerous condition. In so holding, we do no more than apply ordinary negligence principles, analogizing this particular condition to a variety of comparable dangers traditionally triggering the duty of due care. See, e.g.,Campbell v. Valley Garden Apartments, 600 So.2d 240, 241
(Ala. 1992) ("steel plate suspended over a drainage ditch");Bates v. Peoples Savings Life Ins. Co. of Tuscaloosa,475 So.2d 484 (Ala. 1985) (loose carpet); Coggin v. Starke Bros. RealtyCo., 391 So.2d 111 (Ala. 1980) (steep stairway without a handrail); Pearce v. Sloss-Sheffield Steel Iron Co., 211 Ala. 639,101 So. 585 (1924) (defective wiring); Mudd v. Gray,200 Ala. 92, 75 So. 468 (1917) (defective banister).
Applying this holding, however, we are compelled to conclude that the summary judgment was proper as to Ms. Gentle's claim based on the February attack. Under either theory of recovery advanced by Ms. *Page 935 
Gentle, notice to the premises owner, either direct or imputed, of the dangerous condition is the sine qua non of liability. Thus, Ms. Gentle's failure to present admissible evidence that the dog had displayed aggressive behavior before February 1991 defeats both her claim based on a common-area negligence theory and her claim based on Restatement § 339.
 II. The July Encounter A. Section 339
Ms. Gentle's argument for recovery for the July encounter based on § 339 is also flawed for reasons in addition to those discussed above. A necessary condition for liability under § 339 is the inability of children, "because of their youth," to "discover the [dangerous artificial] condition or realize the risk involved in intermeddling with it or in coming within the area made dangerous by it." Section 339(c).
Ms. Gentle's version of the events negates, rather than satisfies, this element of her cause of action. According to her, the attack in July resulted from a second courtyard encounter in which the dog, while being led by Roper, trampled and scratched Christopher. The only evidence regarding the details of this encounter was contained in the following testimony by Ms. Gentle:
 "Q. What were you told about the second attack in . . . July of 1991?
 "A. Mr. Roper was walking the dog. My son was outside of Kathy Hardiman's window playing. And as soon as Mr. Roper passed my son with the dog — the dog was supposedly on a leash — the dog lunged for my son, knocking him off [his] feet and began tearing at his back. Mr. Roper — it was told to me that Mr. Roper — told my son not to worry, the dog would not hurt him, and did not make an immediate effort to pull the dog or the chain off of my son until Ms. Hardiman screamed at him through the window."
This testimony is inadmissible hearsay, but even if it were admissible, it would indicate only that Christopher Gentle did not, in any sense, "intermeddle" with the dog or come "within the area made dangerous by it," within the meaning of § 339(c). On the contrary, this testimony indicates that the dangerous condition was brought to Christopher, who, having been severely injured by the same dog five months earlier, apparently appreciated the danger and, understandably, exhibited fear and distrust. Gentle, therefore, failed to produce evidence sufficient to overcome a properly supported motion for summary judgment against her claim based on § 339.[3]
 B. Maintenance of Common Areas
Ms. Gentle's claim for relief under the common law rule relating to a lessor's maintenance of common areas, however, stands on better ground. Ms. Gentle testified that she complained to the resident manager immediately after the encounter on February 10, 1991. It is undisputed that Pine Valley and Evans took no action to shield tenants from further unpleasant encounters or attacks, such as the one Ms. Gentle says occurred in July 1991.
The evidence thus presents a number of factual issues requiring a jury's resolution. For example, a jury must determine the extent of the dog's propensity for aggression.[4] A jury must also determine under what conditions, if any, the exercise of reasonable care permitted the dog's presence in the common areas. A jury must also determine whether Pine Valley could reasonably have foreseen that Roper would allow the dog, while under his direct and immediate control, to trample Christopher in the alleged July encounter.
The judgment of the trial court, to the extent that it precludes recovery for the encounter on February 10, 1991, is affirmed. As to the July encounter, the judgment, to the extent that it precludes recovery on the *Page 936 
§ 339 claim, is affirmed; however, it is reversed as to the claim alleging a breach of a duty to maintain the common areas, and the cause is remanded for further proceedings consistent with this opinion.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
MADDOX, ALMON, SHORES, HOUSTON, STEAGALL, KENNEDY and INGRAM, JJ., concur.
[1] Section 3-6-1 provides:
 "If any dog shall, without provocation, bite or injure any person who is at the time at a place where he or she has a legal right to be, the owner of such dog shall be liable in damages to the person so bitten or injured, but such liability shall arise only when the person so bitten or injured is upon property owned or controlled by the owner of such dog at the time such bite or injury occurs or when such person has been immediately prior to such time on such property and has been pursued therefrom by such dog."
[2] Where the elements are satisfied, § 339 applies in actions involving injuries to a child whether the child is a trespasser or a licensee. King v. Breen, 560 So.2d 186, 191 (Ala. 1990);Motes v. Matthews, 497 So.2d 1121, 1122 (Ala. 1986); Tolbert v.Gulsby, 333 So.2d 129, 135 (Ala. 1976).
[3] In view of our holding on the § 339 claim, we need not and, therefore, do not, decide whether a dog may constitute an "artificial condition on land," within the meaning of that term as it is used in this section.
[4] Evidence of the February attack — the only admissible evidence presented on that issue — tended to show that the February attack was not entirely unprovoked.