[No. H011231. Sixth Dist. Aug. 25, 1994.]

ANTHONY PORTILLO, Plaintiff and Respondent, v.
HENRY AIASSA, Defendant and Appellant.

**COUNSEL**

Gassett, Perry & Frank, William H. Gavin III and Miruni Soosaipillai for Defendant and Appellant.

Packard, Packard & Johnson, Lon D. Packard, Ronald D. Packard and James S. Partridge for Plaintiff and Respondent.

**OPINION**

**MIHARA, J.**—Respondent Anthony Portillo was attacked and seriously injured by a dog. He brought an action against the dog's owner, John Kim,[1] and the owner's landlord, appellant Henry Aiassa. After the jury rendered a verdict in favor of respondent, appellant filed the instant appeal.

---

[1] Mr. Kim is not a party to the instant appeal.

He contends the trial court erred in its jury instructions on a landlord's duty of care. We hold that a landlord has a duty to exercise reasonable care in the inspection of his commercial property and to remove a dangerous condition, which includes a dog, from the premises, if he knew, or in the exercise of reasonable care would have known, the dog was dangerous and usually present on the premises. Accordingly, the judgment is affirmed.

### Statement of Facts

On June 21, 1989, respondent delivered beer to Race Street Liquors. As he was leaving the store, he was attacked by a German shepherd dog owned by the tenant, Mr. Kim, doing business as Race Street Liquors. Respondent sustained severe injuries as a result of the attack. The dog's bite lacerated respondent's scrotum and caused him to fall. As a result of the fall, respondent injured his knee and back.

Appellant owned the building in which the attack occurred. The lease under which Mr. Kim held the property had been renewed on July 18, 1988. Appellant did not conduct an inspection of the premises prior to renewing the lease.

Kevin McGuire and Fred Gomez were regular visitors to the store. They testified about the dog's viciousness and the danger involved in approaching the counter. Mr. McGuire also testified that the dog was always on the premises. The dog attacked and injured Mary Florez two weeks before the lease was renewed on July 18, 1988.

There was a wooden sign posted in the liquor store which read: "Beware of Dog . . . WE HAVE A GUARD DOG!! DO NOT PET OR TEASE!" The sign was approximately one and one-half feet wide and one and one-half feet long. It was located on the lower part of the gate leading behind the counter. There was also a copy of a newspaper article about Mr. Kim's dog posted near the door of the store. It was entitled, "Guard dog not amused by 'joke,'" and dated January 14, 1986. The article displayed a picture of the dog with its paws on the store counter and its mouth open as if he were about to attack. The article referred to the dog as "[a] furry juggernaut, replete with iron trap jaws, razor sharp fangs and a rotten disposition," and discussed the dog's recent attack on an attempted robber in the store.

Appellant visited Race Street Liquors several times a year. He had seen Mr. Kim's children lying next to the dog and the dog did not appear vicious. According to Mr. Kim, his dog was not dangerous. He also testified that while people had claimed that the dog had bitten them, the dog had not done so.

The jury found appellant did not have actual knowledge of the dog's dangerous propensities prior to renewing the lease. However, the jury found that he would have learned of the dog's dangerous propensities if he had exercised reasonable care in the inspection of his property and that he was negligent in failing to eliminate this dangerous condition. The jury then awarded damages in the amount of $300,000 plus costs to respondent.[2]

## Discussion

■ Appellant contends the trial court erred in its instructions to the jury on a landlord's duty of care.[3] He claims a landlord owes a duty of care to third parties injured by a tenant's dog only where the landlord has actual knowledge of the dog's dangerous propensities.[4] We disagree.

■ Civil Code section 1714, subdivision (a) provides in relevant part: "Every one is responsible, not only for the result of his willful acts, but also for an injury occasioned to another by his want of ordinary care or skill in the management of his property or person . . . ." Courts have interpreted this statute as establishing that individuals owe a duty of care to avoid injury to others unless public policy mandates an exception. (*Rowland* v. *Christian* (1968) 69 Cal.2d 108, 112 [70 Cal.Rptr. 97, 443 P.2d 561, 32 A.L.R.3d 496]; *Lipson* v. *Superior Court* (1982) 31 Cal.3d 362, 372-373 [182 Cal.Rptr. 629, 644 P.2d 822].) Thus, whether an individual owes a duty of care to another is a question of law. (*Weirum* v. *RKO General, Inc.* (1975) 15 Cal.3d 40, 46 [123 Cal.Rptr. 468, 539 P.2d 36].)

---

[2]The jury awarded $65,000 for economic damages for which both Mr. Kim and appellant were jointly and severally liable. They also awarded $235,000 for noneconomic damages of which each was liable for $117,500. Respondent's costs were $4,835.87.

[3]The trial court instructed the jury that in order to find liability by appellant the plaintiff was required to prove, inter alia, that "defendant Henry Aiassa, had actual knowledge of the dog's dangerous propensities on or before July 18, 1988, or upon the exercise of reasonable care in the inspection of his property would have learned of the dangerousness." The jury was also instructed: "If a landlord renews a lease with a tenant at any time, then as a matter of law he is considered to have the control and obligation to make a reasonable inspection of his premises to remove a dangerous condition which can also be an animal, from his premises, if at the time of the renewal of the lease he knew or in the exercise of reasonable care would have known that the dog is regularly present on the property and the dog is dangerous."

[4]In general, a landlord is not liable for injuries to a tenant or a third party from a dangerous condition on the leased premises which arises after the tenant has taken possession. (*Uccello* v. *Laudenslayer* (1975) 44 Cal.App.3d 504, 510 [118 Cal.Rptr. 741, 81 A.L.R.3d 628].) However, several exceptions to this rule have developed. (*Id.* at p. 511.) "A common element in these exceptions is that either at or after the time possession is given to the tenant the landlord retains or acquires a recognizable degree of control over the dangerous condition with a concomitant right and power to obviate the condition and prevent the injury. In these situations, the law imposes on the landlord a duty to use ordinary care to eliminate the condition with resulting liability for injuries caused by his failure so to act. [Citation.]" (*Ibid.*) Here appellant does not raise any issue relating to whether he had the right to have the dog restrained or removed from the premises before the lease was renewed.

■ A landlord owes a duty of care to a tenant to provide and maintain safe conditions on the leased premises. (*Becker* v. *IRM Corp.* (1985) 38 Cal.3d 454, 467 [213 Cal.Rptr. 213, 698 P.2d 116, 48 A.L.R.4th 601].) ■ This duty of care also extends to the general public. "A lessor who leases property for a purpose involving the admission of the public is under a duty to see that it is safe for the purposes intended, and to exercise reasonable care to inspect and repair the premises before possession is transferred so as to prevent any unreasonable risk of harm to the public who may enter. [Citations.] An agreement to renew a lease or relet the premises . . . cannot relieve the lessor of his duty to see that the premises are reasonably safe at that time." (*Burroughs* v. *Ben's Auto Park, Inc.* (1945) 27 Cal.2d 449, 453-454 [164 P.2d 897].)

Where there is a duty to exercise reasonable care in the inspection of premises for dangerous conditions, the lack of awareness of the dangerous condition does not generally preclude liability. (*Becker* v. *IRM Corp., supra,* 38 Cal.3d at p. 469.) "Although liability might easily be found where the landowner has actual knowledge of the dangerous condition '[t]he landowner's lack of knowledge of the dangerous condition is not a defense. He has an *affirmative duty* to exercise ordinary care to keep the premises in a reasonably safe condition, and therefore must *inspect* them or take other proper means to ascertain their condition. And if, by the exercise of reasonable care, he would have discovered the dangerous condition, he is liable.' " (*Swanberg* v. *O'Mectin* (1984) 157 Cal.App.3d 325, 330 [203 Cal.Rptr. 701].)

In *Mora* v. *Baker Commodities, Inc.* (1989) 210 Cal.App.3d 771 [258 Cal.Rptr. 669], the trial court granted a motion for summary judgment. The plaintiff appealed and contended the landlord had failed to inspect and make the premises safe from dangerous conditions. In that case, the plaintiff was injured when a vessel which was part of the refrigeration system exploded. At the time of the accident the plaintiff was working on the roof of a slaughterhouse and meat packing plant owned by the defendant landlord. The vessel, which contained ammonia gas, had been made 50 to 60 years earlier and the landlord had not inspected the premises prior to the accident. In reversing the judgment, the court stated: "Duty is an obligation to take ordinary care under all the circumstances. [Citation.] Duty is primarily a question of law in which the foreseeability of risk to another is an important consideration. [Citations.] . . . 'Among the criteria for determining whether a landlord acted with ordinary care in the management of his property are: the likelihood of injury, the probable seriousness of such injury, the burden of reducing or avoiding the risk, and his degree of control over the risk-creating defect [citation].' [Citations.]" (*Id.* at p. 779.)

 While no court has considered a landlord's duty of care in circumstances similar to those before us, it is well settled that whether an individual owes a duty in a particular case depends upon the consideration of several factors: " 'the foreseeability of harm to the plaintiff, the degree of certainty that plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden on the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved.' " (*Christensen* v. *Superior Court* (1991) 54 Cal.3d 868, 885-886 [2 Cal.Rptr.2d 79, 820 P.2d 181], quoting *Thompson* v. *County of Alameda* (1980) 27 Cal.3d 741, 750 [167 Cal.Rptr. 70, 614 P.2d 728, 12 A.L.R.4th 701].)

 Applying these principles to the facts of the instant case, we conclude appellant owed a duty to exercise reasonable care in the inspection of his commercial property and to remove or otherwise restrain Mr. Kim's dog. It is reasonably foreseeable that a guard dog kept in a business open to the general public will injure someone; the purpose of such animals is to protect the premises and it is highly unlikely that they are docile by nature. Had appellant inspected the liquor store, he would have observed the "Beware of Dog" sign and the newspaper article and thus learned of the dog's dangerous propensities. Moreover, as is shown in the instant case, the types of injuries inflicted by guard dogs are frequently quite serious. Appellant's failure to require Mr. Kim to remove the animal is also closely connected to the injury suffered by respondent. Under these circumstances, there is moral blame attached to appellant's conduct. He cannot avoid liability by failing to inspect the premises and then claim he had no actual knowledge of the dog's dangerous propensities. In requiring the landlord to conduct a reasonable inspection for the presence of dangerous dogs on commercial property, we do not impose a significant burden on the landlord. The risk of harm to the general public clearly outweighs the presence of a particular tenant on the premises. Further, if the landlord chooses to retain the tenant under these circumstances, insurance is available to reimburse third parties for injuries suffered on the premises.

Appellant argues *Burroughs* and *Mora* are distinguishable because they involve dangerous conditions on the land rather than dangerous animals. He claims the imposition of a duty to inspect for the purpose of discovering dangerous animals is overly burdensome; the dog might not be present or exhibiting any signs of aggression towards others when an inspection is conducted and the dog's owner is unlikely to admit the animal is dangerous.

 As the court noted in *Mora*, however, "the landlord's responsibility to inspect is limited . . . . [T]he duty to inspect charges the lessor 'only

with those matters which would have been disclosed by a reasonable inspection.' [Citations.] . . . The landlord's obligation is only to do what is reasonable under the circumstances. The landlord need not take extraordinary measures or make unreasonable expenditures of time and money in trying to discover hazards unless the circumstances so warrant. When there is a potential serious danger, which is foreseeable, a landlord should anticipate the danger and conduct a reasonable inspection before passing possession to the tenant. However, if no such inspection is warranted, the landlord has no such obligation." (*Mora* v. *Baker Commodities, Inc., supra*, 210 Cal.App.3d at p. 782.)[5]

Here despite his knowledge that Mr. Kim was keeping a dog in a business open to the general public, appellant did not exercise reasonable care in the inspection of the premises. He did not ask about the dog's history, whether and by whom it had been trained, why the sign had been posted, whether the newspaper article accurately portrayed the dog's disposition, whether the dog could be insured or whether individuals other than the Kim family could attest to its behavior. Had he done so, he would have learned the animal was a guard dog with dangerous propensities.

Appellant relies on two cases for the proposition that a landlord's duty to third parties who are injured by a tenant's dog is triggered only when the landlord has actual knowledge of the dog's dangerous propensities. In *Uccello* v. *Laudenslayer, supra*, 44 Cal.App.3d 504, the plaintiff was injured by a German shepherd dog which belonged to the tenants of the residential real property leased by the defendant landlord. After the plaintiff's opening statement, the trial court granted the defendant's motion for nonsuit. The defendant in that case lived near the leased premises and had seen the dog on several occasions when he had visited. The dog attacked and bit two people and following the attack on the plaintiff, at least thirty neighbors signed a petition demanding that the dog be removed. The tenant had also posted "Beware of Dog" signs on the front and back fences.

The *Uccello* court assumed the landlord in that case had actual knowledge of the dog's dangerous nature and held that ". . . if a landlord has such a degree of control over the premises that it fairly may be concluded that he can obviate the presence of the dangerous animal and he has knowledge thereof, an enlightened public policy requires the imposition of a duty of ordinary care. To permit a landlord in such a situation to sit idly by in the

---

[5]The jury was instructed in the instant case that "[t]he duty to inspect charges the landlord only with those matters which would have been disclosed by a reasonable inspection. [¶] It is your duty to determine if the inspection, if there was any inspection, was reasonable under the circumstances."

face of the known danger to others must be deemed to be socially and legally unacceptable." (*Uccello* v. *Laudenslayer*, *supra*, 44 Cal.App.3d at p. 512.) Since the landlord could have terminated the tenancy upon two weeks' notice, the court reversed the judgment.

Though the court was not required to consider a landlord's duty to inspect the premises, it stated: "It should be emphasized that a duty of care may not be imposed on a landlord without proof that he knew of the dog and its dangerous propensities. Because the harboring of pets is such an important part of our way of life and because the exclusive possession of rented premises normally is vested in the tenant, we believe that actual knowledge and not mere constructive knowledge is required. For this reason we hold that *a landlord is under no duty to inspect the premises for the purpose of discovering the existence of a tenant's dangerous animal*; only when the landlord has actual knowledge of the animal, coupled with the right to have it removed from the premises, does a duty of care arise." (*Uccello* v. *Laudenslayer*, *supra*, 44 Cal.App.3d at p. 514, original italics deleted, italics added.)

In *Lundy* v. *California Realty* (1985) 170 Cal.App.3d 813 [216 Cal.Rptr. 575], the court also addressed the circumstances in which a landlord owes a duty of care to third parties to prevent injury from an attack by a dog kept on the premises by the tenant. In *Lundy*, the plaintiff was a field engineer for a cable television company who was injured when he jumped over the fence while trying to escape from the tenant's German shepherd dog. The plaintiff alleged the landlord negligently caused his injuries by leasing the residential real property with knowledge that the tenant would keep a German shepherd dog on the premises. However, the landlord had no knowledge of the dog aside from the rental agreement which provided that the dog could be kept on the premises. The *Lundy* court refused to extend the landlord's duty under these circumstances. It followed *Uccello*, stating "An *owner* of a dog may be held liable for injuries inflicted by it on another person without any showing the dog had any especially dangerous propensities or that the owner knew of any such dangerous propensities. [Citations.] However to impose liability on someone other than the owner, even a keeper, ' "*previous knowledge of the dog's vicious nature must appear*." ' [Citations.]" (*Id.* at p. 821.) The court therefore concluded that summary judgment had properly been granted.

The instant case is distinguishable from *Uccello* and *Lundy*. Those cases involved a family pet kept in a single-family residence. In contrast here the animal was a guard dog in a liquor store which was open to the public. The risk that someone would be seriously injured was far greater in the instant case. Moreover, while we recognize that particular neighborhoods or circumstances may require the presence of guard dogs for safety reasons, there is no

strong public policy in favor of guard dogs in public places. Such animals cannot be classified as "an important part of our way of life" in the same way that pets can. (*Uccello* v. *Laudenslayer, supra*, 44 Cal.App.3d at p. 514.)

■ Appellant also contends the imposition of a duty to inspect the premises for dangerous animals creates strict liability on the part of a landlord. He claims that even if he had inspected the liquor store prior to renewing the lease he would not have learned of the dog's dangerous propensities, but nevertheless he would be held liable for any subsequent injuries. We disagree.

Here appellant was aware of the dog's presence at the liquor store. If he had used reasonable care in the inspection of the premises, he would also have seen the "Beware of Dog" sign and the newspaper article which discussed the dog's disposition and behavior. Under these circumstances, a reasonable person would have sought additional assurances that the dog was not dangerous prior to transferring possession of the premises to the tenant. Moreover, there are numerous scenarios in which a landlord could exercise reasonable care in inspecting the premises and not discover the presence of a dangerous dog. For example, the tenant might conceal the animal or the animal might not be on the premises at the time of the inspection and nothing alerts the landlord of his existence or there might be no indications that the animal is dangerous. Under these circumstances, a landlord would not be held liable for any injuries suffered by individuals on the premises. Thus, our holding does not impose a strict liability standard upon landlords in these cases.

### Disposition

The judgment is affirmed.

Premo, Acting P. J., and Wunderlich, J., concurred.