511 P.2d 149

**Rose R. SCHOFIELD, Plaintiff and Appellant,**

v.

**Kenneth KINZELL, Defendant and Respondent.**

No. 13056.

Supreme Court of Utah.

June 5, 1973.

428

Ramon M. Child, Salt Lake City, for plaintiff-appellant.

Merlin R. Lybbert, Salt Lake City, for defendant-respondent.

CALLISTER, Chief Justice:

Plaintiff, the guest of a tenant, initiated this action against the landlord to recover damages for the injuries she·sustained in a fall on accumulated ice and snow .in a parking lot used by the tenants and their guests. The matter was tried before a jury, which in response to a special interrogatory found no negligence judgement was rendered for defendant, and plaintiff appeals.

Defendant is the owner of a sixplex apartment house in Bountiful, Utah. A parking lot, which will accommodate twelve cars, is located behind the building. Prior to Christmas, there had been several heavy snow storms in the area, although there was no snowfall for approximately five days previous to the accident. Defendant had shoveled and cleared the walkways leading to and around the building, but he had made no effort to shovel, sand, or salt the parking area. There was an

accumulation of snow on the parking area. The alternate thawing and freezing had created a considerable amount of ice.

On Christmas morning, plaintiff contacted her son by telephone, defendant's tenant, to confirm a breakfast invitation. Her son directed her to park her automobile in the parking lot because of the large piles of snow deposited by the city snow plows along the curb area in front of the building. Plaintiff, who was 64, in the company of her husband, who was 79, parked her car; and the two, clinging to one another, slowly progressed through the icy ruts to the apartment building.

About noon time, the parents and son and his wife decided to visit other relatives. The son, who was to drive them in his vehicle, preceded the others to the parking area to his automobile, which he backed into a position near the steps of the building to avoid their having to go through the snow. Plaintiff, however, found it necessary to return to her automobile to procure certain Christmas presents in her trunk. As she proceeded towards her vehicle, she fell and sustained the injuries for which she now seeks recovery.

Defendant asserted the defenses of contributory negligence and assumption of risk. He emphasized the obvious knowledge plaintiff had obtained of the slippery condition of the lot when she crossed it the first time, the type of footwear (composition soles) that she had, and her admission that she had increased the speed of her gait when she discovered the snow and ice had been softened by the sun.

On appeal, plaintiff contends that the trial court erred in instructing the jury as to the duty of the landlord and in refusing to give the instructions she requested on the subject. This alleged error was further aggravated by certain misstatements made by the trial court during the voir dire examination of the jury, which were not subsequently corrected by the written instructions.

During the voir dire examination of the jury, the trial judge stated that he wanted to know the prospective juror's feelings about the snow law, which the judge then proceeded to define. He explained that snow was a natural condition, which people are expected to guard against. He stated that if you have an artificial condition or a gross, unusual hazard and you invite people on the premises, you can't trap them. However, if it is a natural condition, there is no liability, since people are supposed to take care of themselves. He promised to define the law more carefully later.

The instruction, involving the landlord's duty, was formulated as an interrogatory, with an accompanying explanation; it provided:

Do you find it proven by a preponderance of the evidence that the defendant

negligently allowed an unreasonably hazardous condition to exist in the parking area where the plaintiff fell?

Answer: Proven———— Not proven: ————

Explanation:

The law requires a landlord to use reasonable care to make the premises safe for guests of tenants in an apartment house; but he is not required to remove all hazards. He must do that which an ordinarily prudent person would do under the circumstances as they were if he knew what they were and must do what a reasonable landlord would do to inform himself as to conditions present. He is negligent if he fails to take the reasonable precautions he knew or should have known had he used reasonable care, within a reasonable time to avoid subjecting others to unreasonable risk of injury. He is not required to avoid the development of or removal of all risk, but is only required to act reasonably. He may consider all factors present such as but not limited to the cost of removing or reducing the risk, the practicality of such action, whether or not others can see or discover the risk, and may legally assume others will likewise use reasonable care for their own safety.

In a climate where snow is one of the realities of winter, all persons are required in order to be free of negligence, to use reasonable care regarding risk ordinarily associated with snow. Landlords may generally assume others will avoid injury to themselves unless hazardous conditions develop that are unusual, or not ordinarily discoverable or are not discovered in a reasonable manner by a person using ordinary care in passing through the area. The landlord may not close his eyes to risks of injury that are not ordinarily expected to be present by others who are reasonably informed on local winter problems that can be expected in the area.

■ The jury responded to the foregoing interrogatory as not proven. Plaintiff urges that the instruction does not reflect the law in this jurisdiction. We agree. The instruction appears to be, particularly in the second paragraph, a refinement of the trial judge's definition of the snow law, i.e., liability is contingent on the existence of an abnormal or artificially created condition.

■ In Cornwell v. Barton,[1] this court concluded that the ice and snow situation was subsumed under the general duty of due care imposed upon the landlord. A landlord has a duty to exercise ordinary

1. 18 Utah 2d 325, 422 P.2d 663 (1967). #13056

care to maintain the common areas in a reasonably safe condition for tenants and guests. The landlord is not a guarantor for the safety of his tenants as they proceed along the common ways. An accumulation of ice or snow upon those portions of the premises reserved for the common use of his tenants may make the landlord liable for injuries sustained by his tenant which are due to such an accumulation, provided the landlord knows, or should have known of the condition and failed to act within a reasonable time thereafter to protect against injuries caused thereby. The mere accumulation of snow or ice does not ipso facto make the landlord liable, he must be given a reasonable time after the storm has ceased to remove the accumulations or to take such measures as will make the common areas reasonably safe from those conditions which pose an unreasonable risk of harm to the user.[2]

Plaintiff's requested instructions 3, 4, 5, and 6, incorporated the law applicable to the instant fact situation, and the trial court erred to the prejudice of plaintiff by not giving the jury instructions to the effect of those submitted.

Plaintiff further urges that she is entitled to a ruling as a matter of law that

defendant was negligent under the undisputed evidence adduced in this case. Although her argument is quite persuasive, there appears a legitimate area of doubt as to whether all reasonable minds would so conclude. Plaintiff emphasizes that the area must be in a reasonably safe condition for walking; however, she has ignored the fact that the parking area was used primarily for vehicular traffic. The compression of the snow by the tires, and the accretions dropped from the undercarriage of vehicles in inclement weather create a condition somewhat different from that to be expected on a sidewalk. There emerges a question of fact as to whether, considering the use of the parking area, the condition of the area created an unreasonable risk of harm to the users. Since this cause must be retried, it appears a wiser course to submit all the issues to the trier of fact. Plaintiff's remaining argument on appeal is without merit.

The judgment of the trial court is reversed, the plaintiff is granted an order for a new trial. Costs are awarded to plaintiff.

TUCKETT, J., concurs.

HENRIOD, J., concurs in the result.

2. Fuller v. Housing Authority of City of Providence, 108 R.I. 770, 279 A.2d 438 (1971); Kopke v. AAA Warehouse Corporation, 30 Colo.App. 470, 494 P.2d 1307 (1972); 26 A.L.R.2d 610; Restatement, Torts 2d, § 360.

CROCKETT, Justice (dissenting).

It is my opinion that there was no prejudicial error justifying the overturning of the jury verdict and the reversal of the judgment. I make no argument for perfection in the instructions. They may be somewhat wordy, and overlapping in parts. Nevertheless the jury were properly instructed that they should not single out and place emphasis on any particular instruction, but should consider all of them together. We should assume that they honored their oaths and did so. In so reading them it is my impression that the jury would understand what I regard to be the correct measure of duty of both the defendant landlord and the plaintiff: to exercise the degree of care that an ordinary reasonable and prudent person would exercise under all of the existing circumstances as shown by the evidence, and that this included the duty of a landlord to guests as related to the vagaries of winter weather.

The judgments of courts and the verdicts of juries, arrived at after all of the procedures up to and including formal trial, should have a high degree of solidarity and respect. This is essential to serve their purpose of preserving the good order of society. To whatever degree such verdicts and judgments can be overturned for anything less than substantial causes, to that same degree the total structure of law and justice is undermined and its ability to fulfill that purpose is impaired. For this reason among others, I do not think the cause of justice is well served by over techical post-mortem reviews or reversals. In the course of a trial in which human imperfections must play some part, it is too much to expect that a trial of any length could take place without some things occurring short of perfection, and which to the losing party, may seem blamable for his failure to prevail.

Consonant with the foregoing, the question to be determined should not be, merely whether there may be some minor discrepancy or inconsistency in the instructions, nor whether some matter of fact or principle of law could have been more clearly or more aptly stated. It should be whether consideration of the instructions as a whole would provide the jurors with a reasonable and practical basis for understanding the issues of fact and the principles of law upon which they should make their determination. If that objective is accomplished, and the parties had an opportunity to fully and fairly present their evidence and arguments upon the issues, the verdict of the jury should not be disturbed unless it is shown not only that there was error, but that it was substantial and prejudicial in the sense that there is a reasonable likelihood that the result would have been different in the absence of the error. Mea-

sured in the light of what I have said above, I do not believe that the reversal of the judgment is justified.

ELLETT, J., concurs in the dissenting opinion of CROCKETT, J.