**2022 UT 36**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

MIGUEL JOSE HUITRON, an individual, THE ESTATE OF MIGUEL JOSE
HUITRON, and STEPHEN J. BUHLER, as special administrator
of THE ESTATE OF MIGUEL JOSE HUITRON; DOES I-V
*Appellants*,

*v.*

DONIEL KAYE,
*Appellee*.

No. 20210194
Heard April 11, 2022
Filed August 25, 2022

On Appeal of Interlocutory Order

Third District, Salt Lake
The Honorable Mark Kouris
No. 200900654

Attorneys:

Joseph J. Joyce, Bryan J. Stoddard, South Jordan, for appellants

Bradley Levin, Jim Leventhal, Julia T. Thompson, Denver, CO,
Robert M. Henriksen, Salt Lake City, for appellee

JUSTICE PETERSEN authored the opinion of the Court, in which
CHIEF JUSTICE DURRANT, ASSOCIATE CHIEF JUSTICE PEARCE, JUDGE
MORTENSEN, and JUDGE TENNEY joined.

Due to their retirement, JUSTICE HIMONAS and JUSTICE LEE did not
participate herein; COURT OF APPEALS JUDGE DAVID N. MORTENSEN
and COURT OF APPEALS JUDGE RYAN D. TENNEY sat.

JUSTICE HAGEN became a member of the Court on May 18, 2022,
after oral argument in this matter, and accordingly did not
participate.

JUSTICE POHLMAN became a member of the Court on August 17,
2022, after oral argument in this matter, and accordingly did not
participate.

JUSTICE PETERSEN, opinion of the Court:

## INTRODUCTION

¶1 Miguel Huitron was driving near Heber City, Utah, when he caused a serious traffic accident that killed multiple people. Huitron also died in the accident. Plaintiff Doniel Kaye was the only survivor of the crash, and he suffered severe injuries. About three years after the accident, Kaye filed a personal injury lawsuit against Huitron's estate (the Estate). In pretrial litigation in the district court, he disclosed over $650,000 in medical damages and claimed total damages in the millions.

¶2 The Utah Probate Code contains deadlines within which any claim to a decedent's assets, including a tort claim, must be "presented" to the decedent's estate.[1] UTAH CODE § 75-3-803(1). This "Nonclaim Statute" requires that all claims against a decedent's estate that arose before the decedent's death must be presented to the estate within one year after the decedent's death or they are "barred."[2] *Id.* § 75-3-803(1)(a). It does not, however, "affect[] or prevent[]" a plaintiff's ability to pursue insurance proceeds from the decedent's liability insurance "to the limits of the insurance protection only." *Id.* § 75-3-803(4)(b).

¶3 The Estate moved for partial summary judgment. It argued that because Kaye had failed to present his claim to the Estate within one year of Huitron's death, the Nonclaim Statute barred Kaye from seeking the Estate's assets and limited his recovery to the per-person limit on Huitron's automobile liability insurance policy, which was $25,000.

¶4 Kaye countered that the issue of damages was not ripe. He argued that he should be allowed to prove the full extent of his damages at trial because it could lead to an increase in the "limits of the insurance protection." Specifically, he contended that if he obtained a judgment against the Estate that was larger than the applicable insurance policy limit, the Estate would have a potential bad faith claim against its insurance company that it could assign to Kaye. And he reasoned that any such bad faith

---

[1] For a description of how a claim is to be "presented" to an estate, see *infra* ¶ 11 n.5.

[2] The Nonclaim Statute includes other presentment deadlines that are not at issue here. *See* UTAH CODE § 75-3-803(1)(b).

claim should be deemed to fall within the "limits of the insurance protection."

¶5    The district court denied the Estate's motion. And the Estate sought this interlocutory review.

¶6    We conclude that in this case, the following issues can be decided as a matter of law at the summary judgment stage. First, because it is undisputed that Kaye did not present his claim to the Estate within a year of Huitron's death, the Nonclaim Statute bars him from seeking the Estate's assets. Accordingly, the Estate faces no exposure in this lawsuit as a matter of law, and any damages that Kaye is awarded may be collected only from available insurance proceeds. Second, under Utah law, potential proceeds from a bad faith claim against the insurer do not fall within "the limits of the insurance protection." This is because a bad faith claim belongs to the insured (here, the Estate) and not an injured third-party (Kaye). And the Estate would have a bad faith claim against the insurer only if a judgment exceeding the insurance policy limit were entered against the Estate. But because an excess judgment against the Estate is a legal impossibility, so is a bad faith claim against the insurer.

¶7    Accordingly, we reverse the district court's denial of partial summary judgment to the Estate.

### BACKGROUND[3]

¶8    On February 14, 2017, Miguel Huitron was driving when he allowed his car to drift over the center line into oncoming traffic and caused a serious accident. Unfortunately, Huitron and the passengers in his car all died, along with the driver of the car that Huitron hit. The only survivor of the crash was Doniel Kaye, a passenger in the other car. Although he survived, Kaye suffered severe injuries, including facial and neck lacerations, unstable spinal fractures, and a traumatic brain injury with prolonged amnesia.

¶9    Huitron's family initially did not open a probate estate. Eventually, a Special Administrator for the Estate was appointed in the district court on January 8, 2020. Later that month—which

---

    [3] "[I]n reviewing a denial of summary judgment, we view the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party." *Utah Dep't of Env't Quality v. Redd*, 2002 UT 50, ¶ 3, 48 P.3d 230.

was almost three years after Huitron's death—Kaye brought a personal injury claim against the Estate. Over the course of discovery, Kaye disclosed medical expenses exceeding $650,000, and claimed total damages in the millions.

¶10 At the time of the accident, Huitron was driving a car insured by Casualty Underwriters Insurance Company (the insurer). The policy had a bodily injury liability limit of $25,000 per person (Utah's statutory minimum) and $65,000 per accident. Based on these policy limits, the Estate made a settlement offer of $25,000 under rule 68 of the Utah Rules of Civil Procedure.[4]

¶11 The Estate then moved for partial summary judgment, arguing that under the Probate Code, Kaye could recover no more than the $25,000 of liability insurance proceeds it had offered. It relied on the Nonclaim Statute, which provides that "[a]ll claims against a decedent's estate which arose before the death of the decedent . . . are barred against the estate" if they are not presented[5] within "one year after the decedent's death." UTAH CODE § 75-3-803(1)(a). But the statute does not affect or prevent, "to the limits of the insurance protection only, any proceeding to establish liability of the decedent or the personal representative for which the decedent or the personal representative is protected by liability insurance." *Id.* § 75-3-803(4)(b). The Estate argued that

---

[4] This rule provides that: "Unless otherwise specified, an offer made under this rule is an offer to resolve all claims in the action between the parties to the date of the offer, including costs, interest and, if attorney fees are permitted by law or contract, attorney fees." UTAH R. CIV. P. 68(a).

[5] The Probate Code describes the manner in which claims may be "presented" to an estate as follows: "(a) The claimant may deliver or mail to the personal representative, or the personal representative's attorney of record, a written statement of the claim indicating its basis, the name and address of the claimant, and the amount claimed, or may file a written statement of the claim, in the form prescribed by rule, with the clerk of the court," UTAH CODE § 75-3-804(1)(a); or "(b) The claimant may commence a proceeding against the personal representative in any court where the personal representative may be subjected to jurisdiction to obtain payment of the claim against the estate, but the commencement of the proceeding must occur within the time limited for presenting the claim," *id.* § 75-3-804(1)(b).

because Kaye "did not officially present his personal injury claim to [the] Estate within one year of Mr. Huitron's death," the Nonclaim Statute prevented him from recovering any amount beyond the automobile liability insurance policy limit. The Estate thus asked the district court to find, as a matter of law, that Kaye's recovery was limited to $25,000.

¶12 Kaye rejected the Estate's rule 68 offer and opposed the Estate's motion. He contended that the court should not limit his damages before trial through summary judgment because the issue of damages was not yet ripe. Additionally, Kaye argued that evidence of Huitron's liability insurance was both irrelevant to Kaye's claim and inadmissible at trial, and thus the district court could not consider the evidence in ruling on the Estate's motion. In the alternative, Kaye argued that there were disputes of material fact as to the amount of the "limits of the insurance protection." According to Kaye, this statutory language did not necessarily limit damages to $25,000 in his case because if he could prove at trial that his damages exceeded $25,000, the Estate might have a bad faith claim against the insurer, which it might then assign to Kaye. Kaye argued that because of this possibility, the "limits of the insurance protection" were not necessarily limited to $25,000.

¶13 The district court denied the Estate's motion. Its written order explained that

> there remain issues of law and fact bearing on whether the Utah non-claim statute applies to limit Mr. Kaye's damages recovery[] on a pre-trial basis. No Utah appellate court has addressed the meaning of the 'to the limits of the insurance protection only' language in the non-claim statute, in particular in the context of a claim that a liability insurer has violated its good faith obligations towards an insured. There are issues of fact as to bad faith conduct on the part of Defendant's insurer and its application to this case. Given the unsettled law and the factual disputes regarding the Defendant's liability insurer's conduct identified in [Kaye's] Response to the Motion, summary judgment is not proper.

(Citation omitted.)

¶14 The Estate successfully petitioned for interlocutory review. We exercise jurisdiction pursuant to Utah Code section 78A-3-102(3)(j).

**STANDARD OF REVIEW**

¶15 When reviewing a district court's summary judgment ruling, we review the court's "legal conclusions and ultimate grant or denial of summary judgment for correctness." *Cochegrus v. Herriman City*, 2020 UT 14, ¶ 14, 462 P.3d 357 (alteration in original) (citation omitted) (internal quotation marks omitted).

**ANALYSIS**

¶16 The Estate argues that the district court should have granted its motion for partial summary judgment and ruled that the Nonclaim Statute limits Kaye's recovery to the $25,000 limit of Huitron's automobile liability insurance policy as a matter of law. Kaye contends that the district court correctly denied the Estate's motion, asserting that the issue of damages was not ripe and there are issues of fact as to the amount of available "insurance protection."

¶17 As we will explain, we agree with the Estate. However, this case illustrates why the Nonclaim Statute can sometimes be difficult to implement in the trial court as a practical matter. This is because, while the Nonclaim Statute is a bar to untimely claims against an estate's assets, it does not prevent a plaintiff from pursuing available proceeds from the decedent's liability insurance. But to do this, the plaintiff must sue the decedent's estate (as opposed to filing a direct suit against the decedent's insurer). So a plaintiff in Kaye's position, who has missed the Nonclaim Statute's presentment deadline, is barred from suing the estate to obtain its assets, but is permitted to sue the estate to obtain available insurance proceeds. And such a lawsuit may look no different than a suit to obtain estate assets. The only difference is that, as a legal matter, the estate's assets are not actually exposed to any liability because regardless of the amount of damages, the plaintiff may recover only from available insurance proceeds.

¶18 We first address the Estate's argument that the district court should have limited Kaye's damages before trial as a matter of law. And we conclude that the Estate is entitled to a summary judgment order that its assets are not exposed in the lawsuit and Kaye may collect any damages awarded to him only from available insurance proceeds.

¶19 We then address Kaye's argument that a potential bad faith claim against the insurance company could increase the amount of the insurance protection available. We reject this argument. And because Kaye has not otherwise challenged the Estate's argument that his recovery is limited to the $25,000 liability insurance policy, we conclude that the Estate is entitled to a ruling in its favor on this point as well.

## I. THE NONCLAIM STATUTE

¶20 The Estate argues that because Kaye failed to present his claim to the Estate within one year of Huitron's death, the Nonclaim Statute bars any claim Kaye might have to the Estate's assets. It argues that this "strict bar" is a legal issue that can be determined at the summary judgment stage.

¶21 In contrast, Kaye views the Nonclaim Statute more like a cap on damages—an issue to be dealt with after trial as needed—rather than a legal issue that can be resolved before trial. From his perspective, the Estate's request to limit his damages is not yet ripe. He reasons that if the jury returned a damages award under $25,000, then the issue the Estate presses here would never arise. And if the jury returned a verdict over $25,000, then the district court could simply cap his damages after trial as needed.

¶22 The Estate is correct that the Nonclaim Statute acts as a bar to untimely claims against an estate's assets. Where a plaintiff has missed the Nonclaim Statute's one-year presentment deadline, the plaintiff is barred as a matter of law from pursuing the estate's assets. This is a legal issue that can be determined at the summary judgment stage, assuming there are no disputed issues of material fact.

¶23 As a preliminary matter, Kaye's tort claim against Huitron was not extinguished by Huitron's death. A cause of action for personal injury "does not abate upon the death of the wrongdoer." UTAH CODE § 78B-3-107(1)(a). The injured person "has a cause of action against . . . the personal representatives of the wrongdoer for special and general damages." *Id.*

¶24 However, Kaye had a relatively short deadline to present his claim to the Estate, in comparison to the usual statute of limitations for a tort claim. Relevant here, the Nonclaim Statute provides that "[a]ll claims against a decedent's estate which arose before the death of the decedent . . . are barred against the estate, the personal representative, and the heirs and devisees of the decedent, unless presented within . . . one year after the

decedent's death." UTAH CODE § 75-3-803(1). In contrast, if Huitron had not died in the accident he caused, Kaye would have had a full four years to bring a lawsuit against Huitron. *See* UTAH CODE § 78B-2-307(3); *Waite v. Utah Lab. Comm'n*, 2017 UT 86, ¶ 30 n.69, 416 P.3d 635.

¶25  As its language suggests, the Nonclaim Statute functions as a complete bar to claims against an estate made after the applicable presentment deadline. In the case of *In re Estate of Ostler*, we described the Nonclaim Statute as "a jurisdictional bar" to untimely claims. 2009 UT 82, ¶ 21, 227 P.3d 242. There, we considered whether the applicable presentment deadline under the Nonclaim Statute could be tolled. If the statute functioned as a statute of limitations, the deadline would be subject to tolling and waiver. *See id.* ¶¶ 16–17. However, if it functioned as a jurisdictional bar against all untimely claims, the presentment deadline could not be tolled and compliance could not be waived. *See id.* ¶ 17. Drawing heavily upon the Colorado Supreme Court's 1981 case *In re Estate of Daigle*, 634 P.2d 71, we endorsed that court's reasoning that

> interpreting the nonclaim statute as jurisdictional in character, and therefore not subject to the tolling provisions otherwise applicable to statutes of limitations, is consistent with one of the basic purposes of the Colorado Probate Code: to promote a speedy and efficient system for settling the estate of the decedent and making distribution to his successors.

*Ostler*, 2009 UT 82, ¶ 20 (quoting *Daigle*, 634 P.2d at 76) (internal quotation marks omitted). Thus, this court concluded that the Nonclaim Statute functioned as a jurisdictional bar to late claims. *Ostler*, 2009 UT 81, ¶ 21.

¶26 Although the issue before us here is different, our holding in *Ostler* regarding the nature of the Nonclaim Statute is controlling. It functions not as a posttrial damages cap, but as a statutory guarantee from the commencement of litigation (assuming it has been determined that the claim is untimely) that an estate's assets are not at risk.

¶27 While this holding governs here, we conclude that it is sufficient and preferable to refer to the Nonclaim Statute as establishing a "bar" rather than a "jurisdictional bar." As the Colorado Supreme Court clarified after *Daigle*, a nonclaim statute does not necessarily deprive the courts of subject matter

jurisdiction over late claims. *In re Estate of Ongaro*, 998 P.2d 1097, 1104 (Colo. 2000). Rather, it simply functions to "bar the enforcement of late-filed claims against an estate." *Id.*

¶28 We read Utah's Nonclaim Statute similarly. The language of the statute says nothing about jurisdiction. It states only that late claims are "barred." *See* UTAH CODE § 75-3-803(1). And we will not add words to the statute that are not there. *See Penunuri v. Sundance Partners, Ltd.*, 2013 UT 22, ¶ 33, 301 P.3d 984 (noting that this court "resist[s] the temptation to add language or meaning to [a statute] where no hint of it exists in the text" (citation omitted)).

¶29 But this clarification does not change the substance of our holding in *Ostler*. Specifically, the Nonclaim Statute acts as a complete bar to claims against an estate that are not presented by the applicable deadline. *Ostler*, 2009 UT 82, ¶ 21. This means that the presentment deadline is not waivable, and the one-year period cannot be tolled. *Id.* And in an untimely suit against an estate for the sole purpose of collecting insurance proceeds, it means that the estate's assets are not at risk as a matter of law.

¶30 Because Kaye's claim against the Estate arose before Huitron's death, it was subject to the Nonclaim Statute's one-year presentment deadline. The crash in which Huitron perished occurred on February 14, 2017. But Kaye did not bring his personal injury claim against the Estate until almost three years later, on January 23, 2020. Accordingly, the Nonclaim Statute bars Kaye from recovering against any of the Estate's assets.

¶31 However, although Kaye missed the presentment deadline and is barred from seeking the Estate's assets, the Nonclaim Statute does not prevent him from seeking available insurance proceeds from Huitron's liability insurance. It provides in subsection 803(4) that "[n]othing in this section affects or prevents[,] . . . to the limits of the insurance protection only, any proceeding to establish liability of the decedent or the personal representative for which the decedent or the personal representative is protected by liability insurance." UTAH CODE § 75-3-803(4).

¶32 And in order to seek any available insurance proceeds, Kaye had to file a claim against the Estate. This is because "[i]n Utah, a plaintiff must direct his action against the actual tortfeasor, not the insurer." *Berneau v. Martino*, 2009 UT 87, ¶ 18, 223 P.3d 1128 (alteration in original) (citation omitted). We have explained that this does not frustrate the presentment deadlines contained in the Nonclaim Statute because the recovery of

insurance proceeds does not "disrupt the estate." *Id.* ¶ 17. This is true because, as a matter of law, Kaye's suit against the Estate is for the limited purpose of seeking insurance proceeds. And as we have explained, the Estate's assets are not at risk.

¶33 Accordingly, we reject Kaye's argument that the issue of damages is not ripe. Because there is no dispute that Kaye did not timely present his claim to the Estate, the Estate is entitled to a summary judgment order that its assets are not exposed in the lawsuit and the only purpose of the suit is to collect available insurance proceeds.

¶34 We next address Kaye's argument that a potential bad faith claim against the insurance company could increase the amount of the "insurance protection" available.

## II. "THE LIMITS OF THE INSURANCE PROTECTION"

¶35 The Estate argues that because the per-person limit of Huitron's automobile bodily injury liability insurance policy was $25,000, Kaye's recovery must be limited to that amount as a matter of law.

¶36 Kaye makes one argument in response. He asserts that "the 'limits of the insurance protection' may exceed the stated policy limits when the insurer has engaged in bad faith conduct." (Citing UTAH CODE § 75-3-803(4)(b).) More specifically, Kaye argues that "when unreasonable actions by the insurer have caused the insured to suffer a judgment beyond the identified policy limits, 'insurance protection' by way of a bad faith claim is available to the insured." He notes that the Estate could choose to assign such a claim to him, and therefore he may be able to recover more than $25,000 from Huitron's insurance. He argues that any such amount should be considered to be within "the limits of the insurance protection."

¶37 As the district court correctly noted, we have never addressed this specific question. As a matter of first impression, we conclude that in the context of an untimely claim against a decedent's estate, potential proceeds from a bad faith judgment do not fall within "the limits of the insurance protection."

¶38 When an insurer breaches the implied covenant of good faith and fair dealing and the insured is thereby damaged, the insured may have a bad faith claim against the insurer. "Bad faith is merely the inverse of the implied covenant of good faith and fair dealing that inheres in all insurance contracts." *U.S. Fid. v. U.S. Sports Specialty*, 2012 UT 3, ¶ 20, 270 P.3d 464. This covenant

"imposes a duty not to intentionally or purposely do anything [that] will destroy or injure the other party's right to receive the fruits of the contract and to . . . act consistently with the agreed common purpose and the justified expectations of the other party." *Id.* (alterations in original) (citation omitted) (internal quotation marks omitted). In the third-party insurance context, the covenant contemplates that insurers will "represent the insureds' interests by acting reasonably and in good faith in settling third-party claims against insureds," *Savage v. Educators Ins. Co.*, 908 P.2d 862, 865 (Utah 1995), and otherwise "be as zealous in protecting the interests of its insured as it would in looking after its own," *Ammerman v. Farmers Ins. Exch.*, 430 P.2d 576, 579 (Utah 1967); *see also UMIA Ins., Inc. v. Saltz*, 2022 UT 21, ¶ 45.

¶39 Accordingly, in Utah, the insurer's duty of good faith is to the insured, as opposed to a third-party beneficiary of the insurance contract. *See Beck v. Farmers Ins. Exch.*, 701 P.2d 795, 801 (Utah 1985). And "an action for breach of the covenant of good faith and fair dealing may be brought only by a party to the insurance contract." *Savage*, 908 P.2d at 865. So here, the insurer's duty is to Huitron, and any bad faith claim would belong to the Estate.

¶40 Kaye notes that the Montana Supreme Court has allowed a Montana plaintiff in Kaye's position to prove the full extent of his damages at trial on the basis of the argument Kaye makes here. *See Goettel v. Estate of Ballard*, 234 P.3d 99, 102–03 (Mont. 2010). While that may be correct, Utah law does not permit the same result.

¶41 While a third-party claimant can sue an insurer directly in Montana, *id.* at 102 (citation omitted), such a lawsuit works differently here. As we have explained, in Utah a bad faith claim belongs to the insured, because the insurer owes a duty of good faith and fair dealing only to the insured and not to a third-party beneficiary such as Kaye. *Savage*, 908 P.2d at 865 ("[A]n action for breach of the covenant of good faith and fair dealing may be brought only by a party to the insurance contract."). And although the insurer would be liable to the Estate if the insurer's failure to act in good faith led to an excess judgment against the Estate, *see Beck*, 701 P.2d at 799, as we have explained, the Nonclaim Statute bars Kaye from seeking damages against the assets of the Estate, *see supra* ¶¶ 29–30. So an excess judgment

against the Estate is a legal impossibility. And consequently, a bad faith claim against the insurer is an impossibility.

¶42 Accordingly, we must reject Kaye's argument that potential proceeds from a bad faith claim fall within "the limits of the insurance protection" under subsection 803(4)(b) of the Nonclaim Statute. So this argument does not provide a basis for rejecting the Estate's motion for partial summary judgment.

¶43 In sum, setting aside for a moment the matter of the precise *amount* of damages that Kaye may seek, under the circumstances here, the Estate is entitled to an order that: (1) the Estate itself is not liable for any of Kaye's damages (in other words, that the Estate faces no exposure in the lawsuit); (2) Kaye's lawsuit is limited to obtaining damages from available liability insurance proceeds; and (3) this does not include proceeds from a potential bad faith claim against the insurer.[6]

III. THE AMOUNT OF THE "INSURANCE PROTECTION"

¶44 In the district court, the Estate submitted evidence with its summary judgment motion that the applicable liability policy limit was $25,000. And we have now rejected Kaye's counterargument that potential proceeds from a bad faith claim could be considered "insurance protection" in these circumstances. Kaye has not made any other argument disputing that $25,000 is the limit of Huitron's liability insurance or that there is other liability insurance protection that he could seek pursuant to subsection 803(4)(b) of the Nonclaim Statute.

¶45 As the Estate has conceded liability and offered Kaye the $25,000 liability insurance limit, the Estate asks us to grant judgment to Kaye in the amount of $25,000. But the Estate did not move for such a ruling in the district court. Rather, it moved the court to order that Kaye's recovery was limited to the $25,000 policy limit. And it appeals the court's denial of that motion. Accordingly, we conclude that the Estate is entitled to a ruling that the amount of the "limits of the insurance protection" is $25,000.

---

[6] To be clear, the third holding applies to untimely claims against an estate. We do not opine on whether it would apply to a timely claim against an estate, as that issue is not before us.

**CONCLUSION**

¶46 We conclude that the Estate is entitled to a partial summary judgment order that: (1) Kaye is barred from collecting damages from the Estate's assets, and the Estate's assets are therefore not at risk in this action; (2) the limited purpose of Kaye's lawsuit is to seek available liability insurance proceeds; (3) potential proceeds from a bad faith claim against the insurer do not fall within "the limits of the insurance protection;" and (4) the amount of the "limits of the insurance protection" here is $25,000. Accordingly, we reverse and remand to the district court to continue the proceedings consistent with this opinion.

¶47 We are mindful that in this case, the Nonclaim Statute leads to a harsh result, especially because the insurance proceeds available to Kaye are so minimal. We do not intend to minimize in any way the injuries Kaye has suffered. But we must apply the statute as it is written, and we are bound by Utah precedent regarding bad faith insurance claims.

―――――――