*This opinion is subject to revision before final
publication in the Pacific Reporter*

**2025 UT 58**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

TODD TESCH, as Custodial Guardian for T.T., a minor child,
*Appellant,*

*v.*

BONNEVILLE PROPERTY INVESTMENT, LLC,
*Appellee.*

No. 20240494
Heard April 9, 2025
Filed November 28, 2025

On Direct Appeal

Second District Court, Weber County
The Honorable Jason C. Nelson
No. 200904906

Attorneys:

Robert W. Gibbons, Lindy W. Hamilton, Ogden, for appellant

Joseph E. Minnock, Salt Lake City, for appellee

JUSTICE PETERSEN authored the opinion of the Court, in which
CHIEF JUSTICE DURRANT, ASSOCIATE CHIEF JUSTICE PEARCE,
JUSTICE HAGEN, and JUSTICE POHLMAN joined.

JUSTICE PETERSEN, opinion of the Court:

## INTRODUCTION

¶1 Bonneville Property Investment, LLC, rented a house to a tenant for several years. The house had a fenced yard and a dog run. At some point, the tenant began to keep two dogs at the property—a pit bull and a German shepherd. Neighbors described the two dogs as "terrifying," "very aggressive," and "not properly restrained." One day, a young boy was playing baseball in the neighborhood and his ball rolled onto the property. When the boy

went to retrieve the ball, the pit bull came out of the house and bit the boy's hand.

¶2   The boy's father, Todd Tesch, sued Bonneville for the injury. Tesch argued that, as the landlord of the property, Bonneville was negligent in failing to protect his son from the pit bull. After discovery, the district court granted summary judgment to Bonneville, concluding as a matter of law that Bonneville did not owe a duty to Tesch's son to prevent the dog from causing injury. Tesch now appeals the dismissal of his claim.

¶3   Generally, a landlord is not liable for a tenant's torts. But the specific question of whether there are circumstances under which a landlord has a duty to protect third parties from a tenant's dangerous dog is an issue of first impression in Utah.

¶4   Tesch advances several theories of premises liability and extends them to the circumstances here. But ultimately, he has not persuaded us that the district court erred in granting summary judgment to Bonneville. We affirm.[1]

## BACKGROUND[2]

¶5   Bonneville Property Investment, LLC, (Bonneville or the landlord)[3] owned a rental property in South Ogden. The property featured a home, a fully fenced yard, a dog run, and a chicken coop.

¶6   A woman rented the property and lived in the home for approximately four years. She initially signed a yearlong rental

---

[1] Tesch also filed a postjudgment motion challenging the district court's summary judgment ruling. And he appeals the district court's denial of that motion. We have considered his arguments, and in affirming the district court's grant of summary judgment we also reject Tesch's argument that the district court abused its discretion in denying his postjudgment motion.

[2] When reviewing a district court's ruling on a summary judgment motion, "we view the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party." *Cochegrus v. Herriman City*, 2020 UT 14, ¶ 4 n.2, 462 P.3d 357 (cleaned up). We state the facts accordingly.

[3] Bonneville was owned and run by two principals, who maintained and managed the property. When we speak of the actions of Bonneville, we are referring to the actions of one or both principals.

agreement with Bonneville, which "automatically renewed on a month-to-month basis." After the first year, she lived in the property under the same agreement, month to month.

¶7    The lease gave the landlord the right to evict the tenant if she failed to abide by any portion of the agreement. The terms of the agreement prohibited the tenant from subletting or assigning her lease and allowed the landlord to access the property for inspections, repairs, and improvements. The agreement also required the landlord to maintain liability insurance for the property.

¶8    The rental agreement included a clause limiting the tenant's right to keep pets at the property, which read:

> Pets and Animals: Subject to the exceptions set forth below heretofore agreed to by Landlord, Tenant shall not maintain any pets or animals in the interior of the premises without the prior written consent of Landlord.

¶9    Beneath this statement, there was space in the agreement where the landlord could identify approved exceptions. In this space the landlord had handwritten "Outside cat & chickens" and signed it with the landlord's initials. The rental agreement did not mention dogs or provide any specific exception for them.

¶10   At some point the tenant started keeping two dogs at the property: a German shepherd and a pit bull. Neighbors testified that the dogs were "terrifying," "vicious," "very aggressive," and "not properly restrained." They said the dogs were "very territorial" when anyone came near the property, and they noticed that the dogs regularly spent time unleashed and outside the fence.

¶11   One neighbor testified that she "would keep [her] young son indoors because [she] was afraid the dogs would attack him." Another neighbor testified that her minor son "started carrying a bat with him whenever he was outside to protect himself against an attack." And she said that, "If the landlords came to the property, it would've been impossible for them to not know about the dogs. The dogs were always there and very scary."

¶12   More than a year before the incident in this case, the dogs charged a minor who ran screaming for help. The minor's mother testified that she had to help her son get the dogs off their property. On another occasion, the police were called because the German shepherd bit a neighbor in his driveway.

¶13   While it was common knowledge in the neighborhood that the tenant had aggressive dogs, the landlord testified that he was unaware that any dogs were living at the property, even though he visited the property at least once a month. None of the neighbors testified that they ever spoke to the landlord about the dogs' vicious tendencies.

¶14   For a period of time, the tenant allowed a woman to live with her at the property without the consent of the landlord. This subtenant testified that she called and "left at least four detailed messages" informing the landlord that there were dogs living at the property. She also testified that there was visible dog hair and waste, in addition to audible barking at the property. But she did not say that her messages described the dogs' vicious tendencies.

¶15   One day, Tesch's son was playing baseball near the property when his ball rolled into the tenant's front yard. When the young boy went to retrieve the ball, the pit bull escaped from the house, attacked the boy, and bit his hand. The parties dispute whether the dog bite happened on the property or immediately outside the property as the boy ran away.

¶16   Tesch sued Bonneville on behalf of his son. He alleged that the landlord was negligent in allowing the tenant to keep dangerous dogs on the property and should therefore be liable for his son's injuries. After discovery, the landlord moved for summary judgment. The district court granted the motion, concluding that, in this case, the landlord did not owe a duty to a third party injured by a tenant's dog. Tesch appealed.

¶17   We have jurisdiction under Utah Code section 78A-3-102(3)(j).

**STANDARD OF REVIEW**

¶18   Tesch seeks a reversal of the court's grant of summary judgment to Bonneville. *See generally* UTAH R. CIV. P. 56. "Summary judgment is appropriate 'if . . . there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law.'" *Orvis v. Johnson*, 2008 UT 2, ¶ 13, 177 P.3d 600 (quoting an earlier version of UTAH R. CIV. P. 56(a)). "We review the court's legal conclusions and ultimate grant or denial of summary judgment for correctness." *Huitron v. Kaye*, 2022 UT 36, ¶ 15, 517 P.3d 399 (cleaned up).

## ANALYSIS

¶19 Tesch argues that the district court incorrectly dismissed his negligence claim against Bonneville. To prevail on a negligence claim, a plaintiff must establish four elements: duty of care, breach of duty, legal causation, and damages. *B.R. ex rel. Jeffs v. West*, 2012 UT 11, ¶ 5 n.2, 275 P.3d 228. Here, the district court concluded that Bonneville was entitled to summary judgment because it owed no duty to Tesch's son as a matter of law.

¶20 Tesch contends that when a dog owner[4] lives on leased property, a landlord should have a duty to protect third parties from the tenant's dog under certain circumstances. No Utah case is directly on point. So we address as a question of first impression whether a landlord can be held liable in negligence for injuries to a third party caused by a tenant's dog.

¶21 "[A] landlord is not deemed to be the principal of his tenant merely because of the landlord-tenant relationship . . . ." *Stephenson v. Warner*, 581 P.2d 567, 568 (Utah 1978). So as a general matter, a landlord "is not responsible for the tenant's torts." *Id.*

¶22 But under Utah premises liability law, a landlord may have liability when someone is injured on leased property under specific circumstances. Tesch advances several theories of premises liability under which he argues that Bonneville had a duty to his son. Two of his theories treat the pit bull as a dangerous condition on land. And the third theory treats the presence of the pit bull as a dangerous activity on land. We consider each theory, but we conclude that Tesch's claim cannot survive summary judgment under any of them.

I. LANDLORD LIABILITY FOR DANGEROUS CONDITIONS ON LAND

¶23 Tesch invites us to extend Utah's existing law related to a landlord's liability for dangerous conditions on leased property to cover the circumstances here.[5] In general, landlords have "a duty

---

[4] In Utah, dog owners are strictly liable for injuries caused by their own dogs. UTAH CODE § 18-1-1(1)(a). No issue is before us as to the tenant's liability for the injury. The only question here is whether Bonneville, as the landlord, may also be liable for the injuries caused by the tenant's dog.

[5] We note at the outset that a dog is quite different from the usual things that are alleged to be dangerous conditions on land—

(continued . . .)

to exercise reasonable care toward their tenants in all circumstances." *Williams v. Melby*, 699 P.2d 723, 726 (Utah 1985). "However, a landlord is not an insurer of the safety of his tenants, and an injury caused by a defect in the premises does not automatically result in landlord liability." *Id.* at 727.

¶24 Before a landlord turns over possession of property to a lessee, we have imposed a duty to "exercise[e] ordinary prudence and care to see that premises he leases are reasonably safe and suitable for intended uses." *Stephenson v. Warner*, 581 P.2d 567, 568 (Utah 1978); *see also Darrington v. Wade*, 812 P.2d 452, 458–59 (Utah Ct. App. 1991) (requiring a landlord who leases property for purposes of public admission "to at least inspect the property and make reasonable efforts to ensure that conditions creating a reasonably foreseeable risk of harm are corrected before the property is delivered to a tenant"). And we have explained that "under appropriate circumstances," a landlord "may be held liable for . . . any . . . dangerous conditions which he created, or of which he was aware, and which he should reasonably foresee would expose others to an unreasonable risk of harm." *Stephenson*, 581 P.2d at 568.

¶25 After a tenant takes possession, landlords still have "a duty to exercise reasonable care toward their tenants in all circumstances." *Williams*, 699 P.2d at 726. But a landlord "is not

---

such as a malfunctioning water heater, *Stephenson v. Warner*, 581 P.2d 567, 567 (Utah 1978); a negligently designed windowsill, *Williams v. Melby*, 699 P.2d 723, 725 (Utah 1985); or a missing drain cover at the bottom of a skateboard run, *Darrington v. Wade*, 812 P.2d 452, 454 (Utah Ct. App. 1991). And we have never held that a dangerous animal qualifies as a dangerous condition on land. *See, e.g., Pullan ex rel. Pullan v. Steinmetz,* 2000 UT 103, ¶ 13, 16 P.3d 1245 (declining to decide whether to adopt Restatement (Second) of Torts section 360, involving liability for dangerous conditions on land, in a case involving a child whose hand was bitten while feeding a horse). A number of other courts have done so. *See, e.g., Vigil ex rel. Vigil v. Payne,* 725 P.2d 1155, 1157 (Colo. App. 1986) (treating a vicious dog as a dangerous condition on land); *Gentle v. Pine Valley Apartments*, 631 So. 2d 928, 934 (Ala. 1994) (same). But Tesch has not analyzed why we should do the same. Nevertheless, we assume without deciding that a dangerous dog can be treated like a dangerous condition on land for purposes of this appeal.

responsible for the tenant's torts, nor for the tenant's failure to keep the premises reasonably safe and in good repair." *Stephenson,* 581 P.2d at 568. "On the contrary, . . . it is the tenant who is liable for any dangerous condition on the premises which he creates or permits to come into existence after he has taken possession." *Id.* at 568–69. However, "[t]he law generally imposes a duty on a landlord to tenants and third parties for portions of property over which it maintains possession or control, such as common areas, that pose a danger." *Liley v. Cedar Springs Ranch Inc.*, 2017 UT App 166, ¶ 26, 405 P.3d 817 (citing *Wilson v. Woodruff*, 235 P. 368, 369 (Utah 1925)).

### A. Before the Tenant Takes Possession: Landlord Liability for Dangerous Conditions the Landlord Creates or Knows of

¶26 Tesch asks us to extend these duties to the circumstances here. He first argues that Bonneville owed a duty to his son because it created, or at least knew about, the dangerous condition before the tenant moved into the property. He contends this is so because: (1) the lease agreement allowed the tenant to have dogs (at least outside),[6] (2) the dog run and fenced yard made the property especially attractive to dog owners, and (3) Bonneville was responsible for obtaining liability insurance "that would apply to any injuries caused by dangerous conditions on the property (and did not require the same of [the tenant])." But even if we viewed all of these facts in Tesch's favor, they do not create a genuine dispute as to whether Bonneville created or knew about a dangerous condition before the tenant took possession of the property.

---

[6] The parties dispute whether the lease agreement allowed the tenant to have dogs. While Tesch argues that this was a dispute of fact—which he asserts the district court improperly resolved against him—the interpretation of a contract is a question of law. *See Mind & Motion Utah Invs., LLC v. Celtic Bank Corp.*, 2016 UT 6, ¶ 15, 367 P.3d 994 ("The interpretation of a contract is [a] legal question, which we . . . review for correctness."); *McEwan v. Mountain Land Support Corp.*, 2005 UT App 240, ¶ 16, 116 P.3d 955 ("Because [a] [l]ease is a contract, we analyze it under well-settled rules of contract interpretation."). We do not resolve the meaning of the lease's terms, however, because it is not determinative. We will assume, for purposes of this appeal, that the lease allowed the tenant to keep dogs outside the home.

¶27 With respect to the fact that Bonneville was required to obtain liability insurance, Tesch does not explain how this is relevant to showing that Bonneville created or knew about a dangerous condition on the property.

¶28 And generally allowing dogs, or even encouraging dog owners to rent the property by providing a fenced yard and a dog run, does not automatically create a dangerous condition on the property, because dogs are not necessarily dangerous. We have not yet addressed the question of whether dogs should be considered inherently dangerous. But in a different context we have rejected a similarly broad argument about pet cats. *See Jackson v. Mateus*, 2003 UT 18, ¶ 13, 70 P.3d 78 ("[Plaintiff] argues that *any* contact between a cat and a human being is fraught with danger. The chance meeting[s] between a cat and a human stranger, where the human stranger initiates the contact with the cat, . . . occur frequently, are not normally dangerous, and, absent an owner's knowledge of particular facts that would render an injury foreseeable, do not present circumstances for which liability arises . . . ."). And we conclude the same is generally true of dogs.

¶29 We agree with the observation of the Supreme Court of Vermont that, "dog ownership is a common activity that is usually safe and generally beneficial." *Gross v. Turner*, 195 A.3d 654, 657 (Vt. 2018) (cleaned up). Other state courts that have imposed liability upon landlords for injuries caused by a tenant's dog under a dangerous condition theory have almost uniformly required the plaintiff to show that the landlord knew the tenant's dog, in particular, had vicious tendencies. *See, e.g.*, *Matthews v. Amberwood Assocs. Ltd. P'ship*, 719 A.2d 119, 131 (Md. 1998) (requiring "knowledge of past vicious behavior by the animal"); *Vigil ex rel. Vigil v. Payne*, 725 P.2d 1155, 1157 (Colo. App. 1986) (requiring "actual knowledge of the vicious actions of the animal"); *Giacalone v. Hous. Auth. of Town of Wallingford*, 51 A.3d 352, 357 (Conn. 2012) (recognizing a duty when the "dog [has] known vicious tendencies"); *Curlee ex rel. Becerra v. Johnson*, 856 S.E.2d 478, 479 (N.C. 2021) (requiring that the landlord "knew the animal posed a danger"); *Linebaugh ex rel. Linebaugh v. Hyndman*, 516 A.2d 638, 639 (N.J. Super. Ct. App. Div. 1986) (finding a duty where the "defendants were aware of the presence of the animal on their property and its vicious propensities"), *aff'd per curiam*, 524 A.2d 636 (N.J. 1987). And Tesch points us to no case concluding that a landlord created a dangerous condition merely by allowing dogs in general or providing a dog-friendly environment.

¶30 Accordingly, without more, we reject Tesch's argument that before the tenant moved in, Bonneville created a dangerous condition by permitting the tenant to have dogs in the lease and providing a fenced yard and dog run.

*B. After a Tenant Takes Possession: Landlord Liability for Dangerous Conditions on Parts of the Property Under the Landlord's Control*

¶31 Tesch next argues that Bonneville had a duty here because it allowed a dangerous condition to exist on property that it controlled. In support of this proposition, Tesch points us to section 360 of the Restatement (Second) of Torts, which reads:

> A possessor of land who leases a part thereof and retains in his own control any other part which the lessee is entitled to use as appurtenant to the part leased to him, is subject to liability to his lessee and others lawfully upon the land with the consent of the lessee or a sublessee for physical harm caused by a dangerous condition upon that part of the land retained in the lessor's control, if the lessor by the exercise of reasonable care could have discovered the condition and the unreasonable risk involved therein and could have made the condition safe.

RESTATEMENT (SECOND) OF TORTS § 360 (A.L.I. 1965).

¶32 We have frequently referenced section 360, although we have not officially adopted it. *See*, *e.g.*, *Pullan ex rel. Pullan v. Steinmetz*, 2000 UT 103, ¶ 13, 16 P.3d 1245 (leaving "for another day the decision whether to adopt as law" section 360); *Schofield v. Kinzell*, 511 P.2d 149, 151 & n.2 (Utah 1973) (citing section 360 for the proposition that a landlord "must be given a reasonable time after [a] storm has ceased to remove [ice and snow] or to take such measures as will make the common areas reasonably safe from those conditions which pose an unreasonable risk of harm to the user"); *Williams*, 699 P.2d at 726 (citing section 360, among others, to describe the traditional common law categories of landlord liability for injuries caused by dangerous conditions on land).

¶33 Still, Utah caselaw "generally imposes a duty on a landlord to tenants and third parties for portions of property over which it maintains possession or control, such as common areas, that pose a danger." *Liley*, 2017 UT App 166, ¶ 26. As this court stated a century ago:

> It is also established that in cases where the landlord lets out [a] portion of his property to separate tenants, and retains in his own possession and control passageways, stairways, and the like for the common use of all tenants, the landlord is under the responsibility of a general owner of real estate who holds out a general invitation to others to enter upon and use his property and is bound to see that reasonable care is exercised to have the portions of his property thus retained by him reasonably fit and safe for the uses which he has invited others to make of them.

*Wilson*, 235 P. at 369.

¶34  A number of states have held landlords liable for injuries caused by a tenant's dog under section 360 or similar principles. Those cases generally hold a landlord liable where: (1) the injury occurred in a common area under the landlord's control; and (2) the landlord had knowledge of the particular dog's vicious propensities. *See*, *e.g.*, *Fouts ex rel. Jensen v. Mason*, 592 N.W.2d 33, 39 (Iowa 1999) (holding a landlord liable for an injury caused by a tenant's dog in a shared backyard because "(1) the injury . . . occurred in common areas over which the landlord, alone or jointly with the tenant, has control; and (2) the landlord knew or should have known of the particular dog's vicious propensities"), *as amended on denial of reh'g* (May 17, 1999); *Gentle v. Pine Valley Apartments*, 631 So. 2d 928, 934 (Ala. 1994) (deciding that the "presence of a tenant's vicious dog in areas shared by other tenants constitutes a 'dangerous condition' and that a landlord must exercise reasonable care to prevent injuries from such a dangerous condition"); *Baker v. Pennoak Props., Ltd.*, 874 S.W.2d 274, 277 (Tex. App. 1994) (holding a landlord liable for an injury caused by a tenant's dog when "(1) the injury . . . occurred in a common area under the control of the landlord; and (2) the landlord . . . had actual or imputed knowledge of the particular dog's vicious propensities").

¶35 But Tesch has not shown that disputed facts precluded summary judgment for Bonneville on this basis because there is no evidence that Bonneville retained control over the area where the dog bite occurred—which was either in the front yard of the property or just outside the property. And at oral argument, Tesch

conceded that at this single-dwelling rental property, there were no "common areas" as that term is traditionally understood.

¶36 In light of this deficiency, Tesch argues that Bonneville should be treated as the possessor of the entire property because the terms of the lease agreement gave it "substantial control" over the property. "Under our precedent, possessors owe significant duties to invitees who come onto their property . . . ." *Hill v. Superior Prop. Mgmt. Servs., Inc.*, 2013 UT 60, ¶ 21, 321 P.3d 1054. These duties are set forth in the Restatement (Second) of Torts sections 343 and 343A, and they involve a responsibility to discover and protect invitees from dangerous conditions on land. *See Hale v. Beckstead*, 2005 UT 24, ¶ 7, 116 P.3d 263 ("The duty of care that possessors of land in Utah owe to invitees upon their property is set forth in sections 343 and 343A of the Second Restatement of Torts."); *English v. Kienke*, 848 P.2d 153, 156 (Utah 1993) (applying sections 343 and 343A in a premises liability action).

¶37 "[W]e have not yet articulated a comprehensive definition of possessor . . . ." *Hill*, 2013 UT 60, ¶ 23 (cleaned up). But we have explained that a "possessor is one in actual physical possession" of property, *English*, 848 P.2d at 156, or one who is in "occupation of the land with intent to control it," *Stevens v. Colo. Fuel & Iron*, 469 P.2d 3, 5 (Utah 1970). In *Hill v. Superior Property Management Services, Inc.*, we noted that our standard for who qualifies as a possessor generally aligns with the definition provided in the Restatement (Second) of Torts section 328E. 2013 UT 60, ¶¶ 22–23. The Restatement defines "possessor" as "a person who is in occupation of the land with intent to control it"; "a person who has been in occupation of the land with intent to control it, if no other person has subsequently occupied it with intent to control it"; or "a person who is entitled to immediate occupation of the land, if no other person is in possession." RESTATEMENT (SECOND) OF TORTS § 328E (A.L.I. 1965).

¶38 In *Hill*, we articulated two non-exhaustive factors that indicate when a person has sufficient control to qualify as a possessor: "(a) the right to exclude others from the property altogether and (b) the right to take all necessary precautions and make necessary repairs." 2013 UT 60, ¶ 24 (cleaned up). These factors attempt to set a fair limit on possessor liability by recognizing a duty of care only for those who can make decisions that "effectively limit [their] exposure to liability." *Id.* ¶ 25.

¶39 Tesch draws upon the two factors described in *Hill* to argue that the lease agreement gave Bonneville sufficient control over the property to be considered a possessor. He argues that Bonneville had the right to "dictate[] presence on the property" because the lease agreement limited sublets, assignments, and occupancy, and required landlord consent for indoor pets. And he contends that Bonneville "had the right to take all necessary precautions and make necessary repairs," because the lease agreement allowed Bonneville to access the property "for purposes of inspection, repairs, alterations, improvements, and supplying services."

¶40 But without more, this is not sufficient to confer possessor status on Bonneville. There is no evidence that Bonneville satisfied any of the definitions of possessor set forth in our caselaw or Restatement section 328E. It was not in physical possession of the property, nor did it occupy the property with the intent to control it. Rather, the landlord visited the property approximately once a month to make repairs and check on the property. And importantly, someone else *did* physically occupy the property: the tenant.

¶41 Moreover, the measure of control granted to the landlord in the lease does not approach the level our precedent has required to indicate possessor status. The lease gave the landlord the right to consent to people living on the property and pets living indoors. But this did not give the landlord the right to control who entered the property on a daily basis. And if the right to enter the property for repairs were enough, it would be difficult to find a landlord who did not qualify as a possessor. Deeming Bonneville to be a possessor under these facts would subject it to liability for conditions it had "little or no control over." *Hill*, 2013 UT 60, ¶ 29. We therefore conclude that there are insufficient facts to create a dispute as to whether Bonneville was a possessor of the property.

II. LANDLORD LIABILITY FOR DANGEROUS ACTIVITIES ON LAND

¶42 Tesch also argues that we should adopt section 379A of the Restatement (Second) of Torts and hold Bonneville liable for the tenant's dog as a "dangerous activity" on land. Section 379A states:

> A lessor of land is subject to liability for physical harm to persons outside of the land caused by activities of the lessee or others on the land after the lessor transfers possession if, but only if,

(a) the lessor at the time of the lease consented to such activity or knew that it would be carried on, and

(b) the lessor knew or had reason to know that it would unavoidably involve such an unreasonable risk, or that special precautions necessary to safety would not be taken.

RESTATEMENT (SECOND) OF TORTS § 379A (A.L.I. 1965).

¶43 With respect to subsection b, "reason to know" has a different meaning than "should know." Comment a to section 12 of the Restatement (Second) of Torts, which defines the two phrases, explains:

> Both the expression "reason to know" and "should know" are used with respect to existent facts. These two phrases, however, differ in that "reason to know" implies no duty of knowledge on the part of the actor whereas "should know" implies that the actor owes another the duty of ascertaining the fact in question. "Reason to know" means that the actor has knowledge of facts from which a reasonable man of ordinary intelligence or one of the superior intelligence of the actor would either infer the existence of the fact in question or would regard its existence as so highly probable that his conduct would be predicated upon the assumption that the fact did exist. "Should know" indicates that the actor is under a duty to another to use reasonable diligence to ascertain the existence or non-existence of the fact in question and that he would ascertain the existence thereof in the proper performance of that duty.

*Id.* § 12 cmt. a.

¶44 Other courts holding a landlord liable under this standard have almost uniformly required a showing that the landlord actually knew the tenant's dog was dangerous. *See, e.g.*, *Park v. Hoffard*, 847 P.2d 852, 856 (Or. 1993) (en banc) (holding a landlord liable under section 379A because the landlord knew the "tenant's dog had bitten a boy before"); *Gross v. Turner*, 195 A.3d 654, 658 (Vt. 2018) (requiring that "the landlord knew of the tenant's dog and its dangerous tendencies"); *Wishon v. Hammond*, 538 P.3d 1197, 1209 (Okla. Civ. App. 2023) (finding a duty consistent with section 379A

where the landlords "knew dangerous dogs were being kept on their property").

¶45 Tesch argues that "harboring a dangerous animal . . . qualifies as a dangerous activity" and should subject Bonneville to liability here. Tesch is correct that many jurisdictions have applied section 379A, or a modified version of its general principles, in negligence actions against landlords for injuries to third parties caused by tenants' dogs. *See, e.g.*, *Park*, 847 P.2d at 855 (applying section 379A in a tenant-dog-bite case); *Wishon*, 538 P.3d at 1206 (same); *Gross*, 195 A.3d at 658 (same).

¶46 But Tesch has not explained why section 379A is an apt legal standard for these circumstances, nor has he applied that standard to the facts here. He simply recommends that this court "officially adopt § 379A" and concludes that "[a]doption of this section would further prevent dismissal in this case."

¶47 This conclusory statement does not "persuade the court of the validity of [Tesch's] position." *State v. Roberts*, 2015 UT 24, ¶ 18, 345 P.3d 1226. Rule 24 of the Utah Rules of Appellate Procedure requires that a party must present the court "with reasoned analysis supported by citations to legal authority and the record [as to] why the party should prevail on appeal." UTAH R. APP. P. 24(a)(8). This rule is a "natural extension of an appellant's burden of persuasion." *See State v. Nielsen*, 2014 UT 10, ¶ 41, 326 P.3d 645, *superseded on other grounds by statute as stated in State v. Richins*, 2025 UT 10, 568 P.3d 1064. And without such analysis, we are not persuaded that Tesch would prevail under section 379A or that we should adopt it here. *See Grundberg v. Upjohn Co.*, 813 P.2d 89, 95 (Utah 1991) (noting that "the restatement serves an appropriate advisory role to courts in approaching unsettled areas of law" but emphasizing that the restatement is not binding unless "we explicitly adopt its various doctrinal principles").

## CONCLUSION

¶48 Since Tesch has not persuaded us that his claim can proceed under any of his proposed theories of liability, we affirm the district court's grant of summary judgment.

———————