Filed 12/10/25  Rialto Terrance Homeowners Assn. v. Superior Court CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| RIALTO TERRACE HOMEOWNERS ASSOCIATION, et al., | E086082 |
| Petitioners, | (Super.Ct.No. CIVSB2309894) |
| v. | OPINION |
| THE SUPERIOR COURT OF SAN BERNARDINO COUNTY, | |
| Respondent; | |
| K.H., a Minor, etc., | |
| Real Party in Interest. | |

ORIGINAL PROCEEDINGS; petition for writ of mandate.  David E. Driscoll, Judge.  Petition granted.

Wood, Smith, Henning & Berman, Vanessa K. Herzog, Nicholas M. Gedo, and Jamie Lee for Petitioners.

No appearance for Respondent.

1

Mendez & Sanchez, Giancarlo Mendes, Michael A. Sanchez, and Arya Tahmassebi for Real Party in Interest.

A child suffered serious injuries from a dog attack while in the garage of an apartment complex. Petitioners are the owner, manager, and homeowners' association of the complex. A tenant of the complex owned the dog. The child, acting through his guardian ad litem, asserted causes of action for negligence and premises liability against petitioners. The trial court denied petitioners' summary judgment motion.

Petitioners seek a writ of mandate requiring the trial court to grant them summary judgment based on the lack of any evidence they knew the dog posed a danger. We grant the petition.

### FACTS

On December 9, 2022, real party in interest K.H., a 12-year-old boy, was bitten on the legs and genitals by a pit bull while in the garage of an apartment complex, causing severe injuries. Petitioners are Legend Apex Investments LLC (Legend), which owned the apartment complex; DFT, Inc. dba Cannon Management (Cannon), which managed it; and Rialto Terrace Homeowners Association (Rialto), a homeowners' association formed when the property was originally developed as condominiums to be sold, though it ended up as a residential rental property. A tenant in the complex, Trisha Scott, owned the dog.

2

Scott's lease prohibited her from having a dog in the apartment without prior written authorization, and disallowed pit bulls (and certain other "dangerous" breeds) altogether, with an exception for service or companion animals.

K.H., acting through his guardian ad litem, sued petitioners and Scott. He asserted claims for premises liability and negligence against petitioners.[1]

Petitioners moved for summary judgment or, in the alternative, summary adjudication. The motion argued petitioners had no actual notice that the dog was dangerous.

The trial court denied the motion. The court found a triable issue of material fact based on a "false exculpatory statement." Jose Lira, a Cannon employee who performed maintenance work at the complex, testified in his deposition that he had "never seen a dog in that unit." There was ample evidence, however, that Lira had seen Scott's dog in her apartment on multiple occasions before the attack, including testimony from Scott and an inspection report Lira had prepared that mentioned the dog. The court reasoned a jury could infer "actual knowledge of the pit bull's dangerous propensity to attack by way of Lira's false exculpatory statement."

The court found this inference "bolstered" by evidence from other witnesses. Specifically, K.H.'s mother had seen the dog pulling another child "in a dragging motion," had heard the dog "growling and barking on several occasions," and reported

---

[1] A third cause of action against petitioners, for breach of contract/third party beneficiary, did not survive demurrer. A fourth cause of action, for strict liability, was asserted only against Scott.

that two neighbors had told her the dog had attempted to attack their own dogs.[2] Also, K.H. had encountered the dog in Scott's apartment "a handful of times," and the dog would bark and growl at him from the crate where it was confined. None of these incidents were reported to petitioners before the dog attacked K.H.

DISCUSSION

Petitioners argue the trial court erred by denying their summary judgment motion. In their view, they had no duty to protect K.H. from Scott's dog unless they had actual knowledge of the dog's dangerousness, and there is no evidence that they had such knowledge. We agree.

A. *Standard of Review*

A court must grant summary judgment if there is no triable issue of material fact and the moving party is entitled to judgment in its favor as a matter of law. (Code Civ. Proc., § 437c, subd. (c).) A party challenging denial of summary judgment may do so by writ petition. (*Id.*, subd. (m)(1).) "'Where the trial court's denial of a motion for summary judgment will result in trial on nonactionable claims, a writ of mandate will issue.'" (*CRST, Inc. v. Superior Court* (2017) 11 Cal.App.5th 1255, 1259-1260.) We review a trial court's decision on summary judgment de novo, determining independently whether the undisputed material facts support summary judgment. (*Id.* at p. 1260; *Intel Corp. v. Hamidi* (2003) 30 Cal.4th 1342, 1348.)

---

[2] Petitioners made no written objections to the admission of statements by neighbors relayed by K.H.'s mother.

4

B. *Premises Liability and Negligence*

To prevail on a negligence cause of action, a plaintiff must show that the defendant "owed them a legal duty, that it breached the duty, and that the breach was a proximate or legal cause of their injuries." (*Merrill v. Navegar, Inc.* (2001) 26 Cal.4th 465, 477.) Thus, "[r]ecovery for negligence depends as a threshold matter on the existence of a legal duty of care." (*Brown v. USA Taekwondo* (2021) 11 Cal.5th 204, 213 (*Brown*).) Premises liability is a negligence theory an injured plaintiff can use to reach the property owner, or other person who controls the property, for failing to exercise due care in managing activities on the premises or warning of hidden defects. (See, e.g., *Kinsman v. Unocal Corp.* (2005) 37 Cal.4th 659, 672.) "[T]he duty arising from possession and control of property is adherence to the same standard of care that applies in negligence cases." (*Kesner v. Superior Court* (2016) 1 Cal.5th 1132, 1142.)

"Whether a duty exists is a question of law to be resolved by the court." (*Brown*, *supra*, 11 Cal.5th at p. 213.) "Duty, being a question of law, is particularly amenable to resolution by summary judgment." (*Parsons v. Crown Disposal Co.* (1997) 15 Cal.4th 456, 465.)

"'California law establishes the general duty of each person to exercise, in his or her activities, reasonable care for the safety of others. (Civ. Code, § 1714, subd. (a).)'" (*Kesner v. Superior Court*, *supra*, 1 Cal.5th at p. 1142.) "[T]here is generally no duty to protect others from the conduct of third parties. The 'special relationship' doctrine is an exception to this general rule." (*Regents of University of California v. Superior Court*

5

(2018) 4 Cal.5th 607, 627.)  Even if there is "a special relationship between the parties or some other set of circumstances giving rise to an affirmative duty to protect," the court may nevertheless determine that "relevant policy considerations counsel limiting that duty." (*Brown*, *supra*, 11 Cal.5th at p. 209; see *Rowland v. Christian* (1968) 69 Cal.2d 108, 112-113 [listing factors to consider in determining whether to limit a duty].)

Courts considering attacks by tenants' dogs have imposed a limited duty of care on landlords arising from the landlord-tenant relationship between the landlord and the dog owner.[3]  The first California case to define this limited duty of care was *Uccello v. Laudenslayer* (1975) 44 Cal.App.3d 504 (*Uccello*).  The *Uccello* court held the landlord owed the victim a duty of care if (1) the landlord had the ability to control the premises rented by the dog owner, and (2) the landlord had actual knowledge of both the dog's presence *and* its "dangerous propensities." (*Id.* at pp. 507, 512, 514 [quote].)

The landlord's actual knowledge may be proven by direct evidence of what the landlord *actually* knew or may be inferred from circumstantial evidence that the landlord *must* have known the dog was dangerous. (*Uccello*, *supra*, 44 Cal.App.3d at p. 514, fn. 4.)  Evidence the landlord *should* have known the dog was dangerous is insufficient. (*Ibid.*)

---

[3] The parties have not distinguished between Legend, Cannon, and Rialto for purposes of this appeal, making arguments that treat them all collectively as a landlord, even though each has a different role in relation to the apartment complex where K.H. was injured.  We will do the same in our discussion, treating petitioners collectively as the complex's landlord.

Since *Uccello*, California courts have continued to impose this limited duty of care on landlords who have actual knowledge of a dog's dangerous propensities, and refused to impose any duty of care absent such knowledge. (See *Chee v. Amanda Goldt Property Management* (2006) 143 Cal.App.4th 1360, 1369 ["[I]t is well established that a landlord does not owe a duty of care to protect a third party from his or her tenant's dog unless the landlord has actual knowledge of the dog's dangerous propensities and the ability to control or prevent the harm"].) For example, in *Lundy v. California Realty* (1985) 170 Cal.App.3d 813 (*Lundy*), this court observed: "An *owner* of a dog may be held liable for injuries inflicted by it on another person without any showing the dog had any especially dangerous propensities or that the owner knew of any such dangerous propensities. [Citations.] However to impose liability on someone other than the owner, even a keeper, "'*previous knowledge of the dog's vicious nature must appear*.'"'" (*Id.* at p. 821.)

There is no direct evidence petitioners had actual knowledge Scott's dog was dangerous. No incidents of purportedly aggressive behavior were reported to petitioners. Also, a landlord's awareness of a tenant's dog's breed, without more, does not support an inference of actual knowledge that the dog has dangerous propensities.[4] (*Lundy*, *supra*, 170 Cal.App.3d at p. 822.)

---

[4] In that vein, even though Scott's lease generally restricted ownership of certain breeds, including pit bulls, apparently because of their reputation for aggression, it implicitly recognizes that individual members of any particular breed do not necessarily pose a danger, but on the contrary may act as service or companion animals.

7

Instead, relying in large part on *Donchin v. Guerrero* (1995) 34 Cal.App.4th 1832 (*Donchin*), K.H. argues Lira's false exculpatory statement during his deposition, together with the evidence of incidents that were not reported to petitioners, amounts to circumstantial evidence sufficient to raise a triable issue as to whether petitioners had actual knowledge of the dog's dangerousness. We are not persuaded.

In *Donchin*, the Court of Appeal reversed the trial court's grant of summary judgment for the defendant landlord, finding a triable issue about whether he knew about the "vicious propensities of his tenant's two rottweilers." (*Donchin*, *supra*, 34 Cal.App.4th at p. 1835.) Initially, the landlord denied knowing the dogs were staying on his property and denied giving permission for them to be on the property. (*Id.* at pp. 1841-1842.) During the litigation, however, including in a declaration in support of his motion for summary judgment, the landlord conceded he had always known about the dogs; they were mentioned in the rental agreement, and he had even played with the dogs during monthly visits to the property to collect rent. (*Id.* at p. 1835.) Nevertheless, he denied ever knowing the dogs were dangerous. (*Id.* at pp. 1835, 1840.) The Court of Appeal found "the fact finder can reasonably infer [the landlord] falsely denied he knew the dogs were dangerous from his initial false denial of knowledge they even existed." (*Id.* at p. 1843.)

That inference from the landlord's initial denial of knowledge was "bolstered" by "affirmative evidence" the landlord had actual knowledge of the dogs' dangerousness. (*Donchin*, *supra*, 34 Cal.App.4th at p. 1843.) A neighbor said he feared the dogs and

8

described behavior "justifying that fear"; the dogs were routinely kept in the front yard, and "frequently" escaped to "[run] loose around the neighborhood, lunging towards both people and other dogs." (*Id.* at pp. 1836, 1843.) A delivery person declared he saw the dogs once a week, and "every time he entered their area they would 'growl and show their teeth, ram the wood fence, attempt to jump the fence and appeared extremely ferocious.'" (*Id.* at p. 1843.) Neither the neighbor nor the delivery person reported these incidents to the landlord, though the neighbor did tell another neighbor and made a report to animal control. (*Ibid.*) An animal behaviorist, however, opined that the landlord, as a "'relative stranger'" to the dogs, had "'undoubtedly witnessed'" similar "'displays of territorial aggressive behavior'" on his regular visits to the property. (*Id.* at p. 1844.) The Court of Appeal reasoned that if a jury had "chosen to disbelieve [the landlord's] denial of knowledge" of the dogs' "vicious propensities" and returned a verdict in the plaintiff's favor, it "would have concluded substantial evidence supported the jury's credibility judgment," so there was a triable issue as to the landlord's knowledge. (*Id.* at p. 1845.)

Like our colleagues in *Ayon v. Esquire Deposition Solutions, LLC* (2018) 27 Cal.App.5th 487 (*Ayon*), we are "uncomfortable" with *Donchin*'s reasoning to the extent it suggests the landlord's false exculpatory statement alone sufficed to show a triable issue as to the landlord's actual knowledge of the dogs' dangerousness. (*Ayon*, at p. 497.) "[W]e would not uphold a jury verdict if the *only* evidence tying the defendant to the crime was a false claim about an alibi." (*Id.* at p. 498.) "That evidence may be relevant,

9

and thus admissible, on the question of the defendant's guilt, but it would certainly not be substantial." (*Ibid.*) In our view, there was a triable issue of the *Donchin* landlord's actual knowledge only because the inference from his false exculpatory statement was bolstered by affirmative evidence showing he must have known about the dogs' dangerous propensities.

Also, the facts of our case differ from *Donchin*'s. In *Donchin*, there was evidence the dogs were consistently and obviously aggressive toward unfamiliar people. Both a neighbor and a delivery person described that behavior, and expressly stated that they feared the dogs. (*Donchin*, *supra*, 34 Cal.App.4th at p. 1843.) In contrast, K.H.'s mother described seeing Scott's dog pulling another child "in a dragging motion," but did not say either that the child had been afraid or that she had been afraid for the child. She had heard Scott's dog "growling and barking on several occasions," but again, did not say she was afraid as a result, and did not provide specifics showing how what she heard might have differed from normal dog behavior. K.H. saw Scott's dog in Scott's apartment, locked in a kennel and barking and growling, but again there are no specifics to support the conclusion this was a sign of dangerous aggression rather than the normal behavior of a dog who had not been trained to stay quiet when confined away from visitors. The same is true of the evidence, direct or circumstantial, that the dog barked and growled at Lira from his kennel. Two neighbors had told K.H.'s mother that Scott's dog had shown aggression toward their own dogs, but that is not the same thing as aggression towards humans. In *Donchin*, an expert on animal behavior reviewed multiple reports of the

10

dogs' behavior, and concluded the landlord "'being a relative stranger, . . . undoubtedly witnessed displays of territorial aggressive behavior'" towards him. (*Donchin*, at p. 1844.) There is no similar expert evidence here.

In our view, *Yuzon v. Collins* (2004) 116 Cal.App.4th 149 (*Yuzon*) is more analogous to this case than *Donchin*. In *Yuzon*, the court affirmed the trial court's grant of summary judgment, finding no evidence the landlord knew of the dog's vicious tendencies. (*Yuzon*, at pp. 168-169.) The landlord testified he was unaware the dog who attacked the plaintiff was on the property, though he had authorized a different dog when the lease was signed. (*Id.* at p. 153.) The dog-owning tenant produced evidence showing the owner did in fact know about the new dog. (*Ibid.*) Despite this contradictory evidence, arguably showing a false exculpatory statement, the court distinguished *Donchin* because the dog had not displayed the same consistent signs of aggressiveness as the dog in *Donchin*, and the landlord had not routinely visited the property as did the *Donchin* landlord. As such, the plaintiff had failed to show a triable issue as to whether the landlord knew about the dog's "vicious propensities." (*Yuzon*, at p. 168.)

Similarly, in this case, there is some evidence Lira knew Scott was keeping a dog in her apartment. Perhaps, having seen the dog, Lira knew or should have known that the dog was an adult male pit bull, which is one of the restricted breeds under Scott's lease. Those facts are insufficient, however, to establish that he must have known the dog was dangerous. (See *Yuzon*, *supra*, 116 Cal.App.4th at p. 168; *Lundy*, *supra*, 170 Cal.App.3d at p. 822.) Here, as in *Yuzon*, the evidence the dog posed a danger was at best

11

ambiguous, sufficient only for speculation that petitioners perhaps should have been concerned about the dog's presence, not that they must have known the dog was dangerous.  There is no direct evidence showing petitioners had actual knowledge the dog was dangerous, nor is there circumstantial evidence supporting a reasonable inference that they must have known it was dangerous, so petitioners are entitled to summary judgment in their favor.

## DISPOSITION

The petition for writ of mandate is granted.  Let a writ of mandate issue directing the respondent superior court to (1) vacate its order denying petitioners' motion for summary judgment and (2) enter a new order granting the motion.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAPHAEL

J.

We concur:

CODRINGTON
        Acting P. J.

MENETREZ
        J.